**FILED**

**UNITED STATES DISTRICT COURT**
**IN AND FOR**
**THE DISTRICT OF COLUMBIA, WASHINGTON, D.C.**

JUL 2 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| FATIMA A. ABREU-GOMEZ, | ) |
| (Alien # 98 716 947) | ) |
| c/o Oriol De Armas | ) |
| 750 N.W. 43 Ave. | ) |
| Miami, Fl. 33126 | ) |
| Apt. 214 | ) |
| Tel: 305-446-8686 | ) |
| Fax: 305-529-0445 | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| Aaron L. Cabrera, Officer in Charge, | ) |
| U.S. Immigration and Customs Enforcement | ) |
| ("USICE"), U.S. Department of Homeland | ) |
| Security ("DHS"), Los Fresnos, Texas, | ) |
| Michael J. Garcia, Director, USICE, | ) |
| Tom Ridge, Secretary, DHS, Sheriff Larry | ) |
| Lynch, McLennan County Sheriff, | ) |
| Waco, Texas, | ) |
| Respondents. | ) |

CASE NUMBER  1:05CV01508

JUDGE: Emmet G. Sullivan

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 07/29/2005

---

## *EMERGENCY* PETITION FOR WRIT OF HABEAS CORPUS
## AND
## *EMERGENCY* MOTION FOR PRELIMINARY INJUNCTION

---

**COMES NOW FATIMA A. ABREU-GOMEZ,** hereinafter, "Petitioner," acting

*pro se*, and hereby petitions this Honorable Court to immediately grant a hearing to

address the issues contained in the instant Emergency Petition for Writ of Habeas Corpus

and Emergency Motion for Preliminary Injunction.

## Emergency Nature of the Petitioner's Writ for Habeas Corpus

On, Thursday, July 28, 2005, the Department of Homeland Security will

commence seeking removal of the Petitioner from the United States of America based on

an expedited order of removal pursuant to 8 U.S.C. §1225. See Exhibit L.

## Jurisdiction

This Honorable Court possesses jurisdiction pursuant to Section 1252(e), 8

U.S.C., §242(e) of the Immigration and Nationality Act; 28 USC § 2241, and 8 U.S.C.

§1252(f).

## Venue

Although the Petitioner is currently detained at McLennan County Jail, 520

Columbus Ave., Waco Texas, 76701 awaiting expedited removal from the United States,

8 U.S.C. §1252(e)(3)(A) provides that "[j]udicial review of *determinations* under section

1225(b) ... is available in an action instituted *in the United States District Court for the*

*District of Columbia.*" (emphasis added). See *Brumme v. INS*, 275 F.3d 443, 449 (5th Cir.

2001).

## Procedural History and Relevant Facts of the Case

The Petitioner, a 33-year-old female, native and citizen of Cuba (Exhibit A), who

also happens to be a naturalized citizen of Spain, last entered the United States at

Brownsville, Texas from Mexico on April 25, 2005. Exhibit B. [1]

On same date, immediately thereafter, the Petitioner was given an initial credible-

fear-determination hearing by a Customs and Border Protection Officer.

---

[1]    The Petitioner had previously entered the United States of America  "AT [or around] THE
BEGINNING OF [2005]" for "1 WEEK OR TEN DAYS." Exhibit C, Record of Sworn Statement.

2

On May 9, 2005, an Employee of the Department of Homeland Security, Citizenship and Immigration Services ("Service"), Asylum Unit deemed the Petitioner inadmissible to the United States and found that the Petitioner had failed to raise a credible fear claim and therefore ordered the petitioner removed pursuant to Section 235(b)(1) of the Immigration and Nationality Act, i.e., expedited removal proceedings. Exhibit D & E.

The Petitioner then sought review of the Service's adverse decision by an immigration judge pursuant to Section 235(b)(1)(B)(iii)(III) of the Immigration and Nationality Act, 8 U.S.C. §1225(b)(1)(B)(iii)(III), and 8 C.F.R. § 208.30.(g),and therefore the Service referred the Petitioner's case to an immigration judge. Exhibit F

On May 14, 2005, the Petitioner, by the Petitioner's counsel's firm, sought the release of the Petitioner via parole. Exhibit G.

On May 16, 2005 an immigration judge reviewed the Service's "Credible Fear Determination" and found that the Petitioner had failed to "establish[ ] a significant possibility that []she would be persecuted on the basis of" one of the enumerated grounds specified under the asylum laws of the United States and affirmed the Service's adverse determination and "returned" the Petitioner's case "to the [Service] for removal of the alien" based upon the Service's administrative May 5, 2005 order of removal. Exhibit H.

On May 18, 2005, the Service declined to parole the Petitioner from custody since she had been "issued an Expedited Removal Order." Exhibit I.

The Petitioner is currently detained at McLennan County Jail, 520 Columbus Ave., Waco Texas, 76701 awaiting expedited removal from the United States.

On June 1, 2005, the Petitioner's counsel became aware of a rule relating to expedited removal proceedings issued by the Secretary of Homeland Security, Tom Ridge, contained in 69 Fed. Reg. 48877 (August 11, 2004). Exhibit J.

Same document reflects the Secretary Ridge's express mandate that "expedited removal proceedings" not be utilized in the case of "Cuban citizens or nationals." 69 Fed. Reg. 48877, 48881 (August 11, 2004).

On September 14, 2004, U.S. Immigration and Customs Enforcement Acting Director Victor X. Cerda, stated in a Memorandum titled "Expedited Removal Guidance" that "E[pedited] R[emoval] will not be applied to ... citizens and nationals of Cuba." Exhibit K.

On June 7, 2005, prior counsel for the Petitioner submitted on behalf of the Petitioner a writ of *habeas corpus* to the United States District Court, Western District of Texas, Waco Division.

As a result of the Petitioner filing the writ of habeas, the Department of Homeland Security informed the District Court it would not be removing the Petitioner prior to July 19, 2005. Exhibit L.

On July 18, 2005, the Honorable Walter S. Smith, United States District Court Judge, transferred the Petitioner' writ of *habeas corpus* to the United States Court of Appeals in and for the Fifth Circuit pursuant to Section 242(a)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §1252(a)(1), as amended by sections 101 and 106 the Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005, known also as the "REAL ID" Act, *See* Public Law 109-13, 119 Stat. 231, enacted on May 11, 2005. Exhibit M. *Abreu-Gomez v. Cabrera et al.*, U.S.

District Court, Western District of Texas, Waco Division Case No. 05-CA-223-WS
(W.D. Tex. June 18, 2005).

On July 19, 2005, the Department of Justice, Office of Immigration Litigation,
Civil Division, Washington, D.C., informed the United States Court of Appeals for the
Fifth Circuit it would not be removing the Petitioner prior to July 28, 2005. Exhibit N.

On July 26, 2005, Untied States Court of Appeals for the Fifth Circuit
"dismiss[ed]" the Petitioner's "petition for review for lack of jurisdiction" on motion by
the Department of Homeland Security. Exhibit N. *Abreu-Gomez v. Cabrera et al.*, Fifth
Circuit Case No.: 05-60686. Exhibit O.

The Petitioner is facing immediate removal from the United States of America
without the Petitioner having the opportunity to seek judicial review of the Department of
Homeland Security's application of "expedited removal proceedings" against her.

The Petitioner has a fiancé whom currently resides in the United States of
America in Miami, Florida.   The Petitioner is not the subject of any criminal or order of
conviction neither in Cuba, Spain, nor the United States of America, or anywhere else
that would preclude her from future eligibility to adjust her status to that of lawful
permanent resident of the United States pursuant to the Cuban Adjustment Act were
("CAA") the Petitioner to be paroled into the United States, or for that matter, any other
form of relief the Petitioner would be entitled to apply for.

5

## Summary of the Argument

Jurisdiction and venue is proper in the United States District Court in and for the District of Columbia.

The Service improperly placed the Petitioner in "expedited removal proceedings" thereby subjecting the Petitioner to an unlawful expedited order of removal.

If the Service successfully removes the Petitioner from the United States the Petitioner will be barred from re-entering the United States of America for a period of five (5) years from the date the Petitioner is physically removed. 8 U.S.C. §1252(a)(9)(A)(i).

But for the fact that the petitioner is awaiting removal from the United States in expedited removal proceedings, the Petitioner would be *prima facie* eligible for parole and subsequent eligibility to apply for adjustment of status pursuant to the CAA within a year of her being admitted or paroled. Section 1, 1966 Cuban Adjustment Act.

As a result of the Department of Homeland Security, Customs and Border Protection's, misapplication of "expedited removal proceedings" to the Petitioner, the Petitioner was barred from fully presenting her asylum claim through testimony and evidence before an immigration judge as well as being able to have an adverse determination, if any, be considered under the judicially reviewable and more safeguarded asylum proceedings available to an alien under Section 240 (INA) removal proceedings.

### Argument and Citations of Authority

The Petitioner is seeking judicial review of the Department of Homeland Security's "determination" of placing her in "expedited removal proceedings" pursuant to §1225(b).

The Petitioner claims exemption from the applicability of expedited removal proceedings as a result of a recently enacted rule contained in the August 11, 2004, Federal Register which, in part, prohibits the Department of Homeland Security from applying expedited removal proceedings to Cuban citizens. 69 Fed. Reg. 48877. See Exhibit J.

Title 8 U.S.C. §1252(e)(3)(A) provides:

"Judicial review of *determinations* under section 1225(b) … is available in an action instituted *in the United States District Court for the District of Columbia.*" (emphasis added). See *Brumme v. INS*, 275 F.3d 443, 449 (5th Cir. 2001)

Then Acting Director Victor X. Cerda, Memorandum titled "Expedited Removal Guidance" provides that "E[pedited] R[emoval] will not be applied to ... citizens and nationals of Cuba." Exhibit K.

Department of Homeland Security, Customs Border Protection employees have failed to follow their own directives to exempt Cuban citizens from expedited removal proceedings.

It is unreasonable to conclude that the Department of Homeland Security, Customs and Border Protection possesses unbridled authority to improperly apply an inapplicable proceeding when a directive clearly demonstrates that same proceedings not be utilized. Judicial intervention is necessary in instances that the Department Homeland Security improperly fails to apply a rule or directive.

7

The Respondents admit the Petitioner is a "citizen of Cuba." The August 11, 2004 rule issued by Department of Homeland Security Secretary Tom Ridge makes an express exception to not apply "expedited removal proceedings" in the case of "Cuban citizens *or* nationals." 69 Fed. Reg. 48877, 48881 (August 11, 2004). (emphasis added). Exhibit J.

Because Petitioner is a Cuban citizen and because she entered into the United States through the Brownsville point-of-entry she is simply not subject to "expedited removal proceedings."

The port-of-entry at Brownsville, Texas is located within the McAllen Sector of the Customs and Border Protection. 69 Fed. Reg. 48877, 48880 (August 11, 2004). Such persons encountered within the McAllen sector shall be placed in expedited removal proceedings except natives or citizens of Cuba. [2]

Petitioner sets forth that the Department of Homeland Security, Customs Border Protection's determination to place her in expedited removal proceedings must be reviewed under habeas corpus proceedings, however, before the United States District Court for the District of Columbia. 8 U.S.C. §1252(e)(3)(A).

The Attorney General (now the Secretary of Homeland Security), pursuant to section 235(b)(1)(A)(iii) of the Act, 8 U.S.C. 1225(b)(1)(A)(iii), designated that aliens apprehended "within the C[ustoms] and B[order] P[rotection] Border Patrol sector[] of ... McAllen," Texas are subject to "expedited removal proceedings" as contained in Section

---

[2]      According to Marissa Villareal, an employee of the CBP McAllen Sector Headquarters, Villareal, the Brownsville point-of-entry is located in what is now known as the "Rio Grande Valley Sector," formerly the "McAllen Sector."    The undersigned counsel apologizes for any inconvenience resulting from this error.

235(b)(1) of the Immigration and Nationality Act, 8 U.S.C. §1225(b)(1). See 69 Fed.

Reg. 48877, 48880 - 48881 (August 11, 2004). Exhibit J.

Section 242(a)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C.

§1252(a)(1), as amended by sections 101 and 106 the Emergency Supplemental

Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005,

known also as the "REAL ID" Act, *See* Public Law 109-13, 119 Stat. 231, enacted on

May 11, 2005, provides in relevant part;

> General orders of removal. - Judicial review of a final order of removal
> (***other than an order of removal without a hearing pursuant to section
> 1225(b)(1)***) is governed only by chapter 158 of title 28 of the United
> States Code, except as provided in subsection (b) ... (emphasis added).

Section 1225(b)(1) "expedited removal proceedings" are separate and distinct

from "General orders of removal." Indeed Section 242(a)(2), INA, 8 U.S.C. §1252(a)(2),

as amended by sections 101 and 106 the REAL ID Act, titled "Matters not subject to

judicial review" - provides in relevant part;

> (A) Review relating to section 1225(b)(1).-Notwithstanding any other provision
> of law (statutory or nonstatutory), including section 2241 of Title 28, United
> States Code, or any other habeas corpus provision, and sections 1361 and 1651 of
> such title,1 no court shall all have jurisdiction to review--
>
> (i)     *except as provided in subsection (e) of this section,* any
>         individual determination or to entertain any other cause or
>         claim arising from or relating to the implementation or
>         operation of an order of removal pursuant to section
>         1225(b)(1) of this title,
>
> (ii)    *except as provided in subsection (e) of this section,* a decision
>         by the Attorney General to invoke the provisions of such
>         section,
>
> (iii)   the application of such section to individual aliens, including
>         the determination made under section 1225(b)(1)(B) of this
>         title, or
>
> (iv)    *except as provided in subsection (e) of this section,*
>         procedures and policies adopted by the Attorney General to
>         implement the provisions of section 1225(b)(1) of this title.

9

Subparagraph (A) of 8 U.S.C. §1252(a)(2) is the only subparagraph amended by

sections 101 and 106 the REAL ID Act which has any relation to "expedited removal

proceedings" as contained in 8 U.S.C. §1225(a)(1).

Section 1252(e), 8 U.S.C., is virtually left *unchanged* by sections 101 and 106 of

the REAL ID Act, and is titled "Judicial Review of Orders Under Section 1225(b)(1)."

Same §1252(e) provides in relevant part;

> (1) Without regard to the nature of the action or claim and without regard
> to the identity of the party or parties bringing the action, no court may—
>
>> (A) enter declaratory, injunctive, or other equitable relief in
>> any action pertaining to an order to exclude an alien in
>> accordance with section 1225(b)(1) of this title except as
>> specifically authorized in a subsequent paragraph of this
>> subsection ...

Subparagraph (2) of §1252(e) goes on to provide;

(2) Habeas corpus proceedings
Judicial review of any determination made under section 1225(b)(1) of this title is
available in habeas corpus proceedings, but shall be limited to determinations
of—
(A) whether the petitioner is an alien,
(B) *whether the petitioner was ordered removed under such section*, and
(C) whether the petitioner can prove by a preponderance of the evidence that the
    petitioner is an alien lawfully admitted for permanent residence, has been
    admitted as a refugee under section 1157 of this title, or has been granted
    asylum under section 1158 of this title, such status not having been
    terminated, and is entitled to such further inquiry as prescribed by the
    Attorney General pursuant to section 1225(b)(1)(C) of this title.

(3) Challenges on validity of the system

(A) In general

*Judicial review of determinations under section 1225(b) of this title <u>and</u>*
its implementation is available in an action instituted in the United States
District Court for the District of Columbia, but shall be limited to
determinations of--
  (i) whether such section, or any regulation issued to

implement such section, is constitutional; *or*

(ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or *is otherwise in violation of law*.

The action must be brought in the United States District Court for the District of Columbia within "60 days." 8 U.S.C. §1252(e)(3)(B).

The Untied States District Court for the District of Columbia then "may order no remedy or relief *other than* to require that the petitioner be provided a hearing in accordance with section 1229a of this title." 8 U.S.C. §1252(e)(3)(B) (emphasis added).

If there is an adverse decision by the immigration court in removal proceedings under section 1229a, 8 U.S.C., the alien who originally was placed in "expedited removal proceedings" may then "obtain judicial review of any resulting final order of removal pursuant to subsection (a)(1) of [8 U.S.C. §1252]." 8 U.S.C. §1252(e)(4)(B).

The scope of inquiry "shall be limited to whether [the expedited order of removal] in fact was issued and whether it relates to the petitioner." 8 U.S.C. §1252(e)(5). There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal. id.

Pursuant to the August 11, 2004 Federal Register notice and the September 14, 2004 directive issued by the Department of Homeland Security, expedited removal procedures should not have been utilized against the Petitioner and therefore cannot not "relate[] to [the Petitioner]."

"Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Morton v. Ruiz*, 415 US 199, 235 (1974); *See also Accardi v. Saughnessy*, 347 U.S. 260 (1954); *Yellin v. U.S.*, 374 U.S. 109 (1963) (decisions of an agency made in violation of its own procedures are reversible even in the absence of a due process violation since agencies must obey their own rules).

In reversing *Accardi* and *Yellin*, the Supreme Court relied on the rule of administrative law for INS's violations of their regulations rather than the due process clause. See also *U.S. v. Kiriaze*, 172 F.2d 1000 (5th Cir. 1949); *Cuesta v. U.S.*, 230 F.2d 704 (5th Cir. 1956) (INS regulations are binding and have effect of law); *and Suh v. INS*, 592 F.2d 230, 231 (5th Cir. 1979), *vacated on other grounds* 646 F.2d 909 (Fifth Circuit Court of Appeals does not look with favor upon INS's violating its own regulations).

Clearly, congress intended to allow persons such as the Petitioner the opportunity to seek *habeas corpus* relief in the United States District Court, District of Columbia. 8 U.S.C. §1252(e)(3)(A).

The REAL ID Act in no way has amended judicial relief in the form of habeas corpus to aliens ordered removed under "expedited removal proceedings" under 8 U.S.C. §1225(b)(1).

Indeed, it would have been effortless for Congress to have eliminated habeas corpus relief to aliens ordered removed under "expedited removal proceedings" with the passage of the REAL ID Act, however, Congress chose not to do so.

In same manner, Congress could have made amended 8 U.S.C. §1252(e)(3)(B) to reflect a United States Court of Appeals as the venue for a habeas corpus petition based on an expedited order of removal under 8 U.S.C. §1225(b)(1), however, Congress

allowed the United States District Court, District of Columbia to remain as the venue for such habeas corpus petitions challenging "expedited removal."

The controlling principle is the basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written by Congress. *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 476, (1992).

Congress clearly stated there is "[j]udicial review *of determinations* under section 1225(b)" (emphasis added) and that such review is to be had in the "United States District Court, District of Colombia."

The Supreme Court has made clear "time and time again" that all canons of statutory interpretation, including legislative history and the disfavor for interpretations that render other statutory provisions superfluous, are mere rules of thumb which must always yield to the plain and unambiguous statutory text set forth by Congress. *Connecticut National Bank v. Germain*, 503 U.S. 249, 253 (1992).

The REAL ID Act in no way amends the United States District Court, District of Columbia's jurisdiction to entertain the Petitioner's case.

The Service is improperly utilizing expedited removal proceedings on a Cuban citizen contrary to Secretary Ridge's directive that expedited removal proceedings not apply to "Cuban citizens *or* nationals." 69 Fed. Reg. 48877, 48881 (August 11, 2004).

If the Department of Homeland Security is successful in physically removing the Petitioner from the United States under an expedited order of removal, the Petitioner will be unable to re-enter the United States of America for a period of five (5) years after her physical removal. 8 U.S.C. §1182(a)(9)(A)(i).

The scope of inquiry in proceedings under 8 U.S.C. §1225 "shall be limited to whether [the expedited order of removal] in fact was issued and whether it relates to the petitioner." 8 U.S.C. §1252(e)(5).    Expedited removal procedures should not have been utilized against Petitioner and therefore cannot "relate[] to [ Petitioner]."

There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal. *Id.*

Congress intended to allow persons such as the Petitioner the opportunity to seek *habeas corpus* relief in the United States District Court, District of Columbia.  8 U.S.C. §1252(e)(3)(A).

Petitioner is not challenging her inadmissibility in the instant proceeding. Petitioner is challenging the Department of Homeland Security's decision to not apply the directive or policy issued on August 11, 2004 the Department of Homeland Security is otherwise mandated to follow.

The United States District Court for the District of Columbia then "may order no remedy or relief *other than* to require that the petitioner be provided a hearing in accordance with section 1229a of this title." 8 U.S.C. §1252(e)(3)(B) (emphasis added).

If there is an adverse decision by the immigration court in removal proceedings under section 1229a, 8 U.S.C., the alien may then "obtain judicial review of any resulting final order of removal pursuant to subsection (a)(1) of [8 U.S.C. §1252]." 8 U.S.C. §1252(e)(4)(B).

With the passage of the REAL ID Act, Congress could have eliminated habeas corpus relief to aliens ordered removed under "expedited removal proceedings", however, it chose not to do so.

14

In same manner, Congress could have made amended 8 U.S.C. §1252(e)(3)(B) to reflect a United States Court of Appeals as the venue for a habeas corpus petition based on an expedited order of removal under 8 U.S.C. §1225(b)(1), however, Congress allowed the United States District Court, District of Columbia to remain as the venue for habeas corpus petitions challenging Department of Homeland Security determinations to apply expedited removal procedures to a particular alien.

The REAL ID Act in no way amends the United States District Court, District of Columbia's jurisdiction to entertain the Petitioner' case.

It is worthy of mention that the Petitioner was a Judge in Cuba. Petitioner fell into disfavor with the Castro regime when she commenced to issue "rulings that weren't in accordance with the Castro regime." See Exhibit P, Page 8, Transcript Contained in Record of Determination/Credible Fear Worksheet.

Due to the obvious senseless persecution encountered by Cuban dissidents, in some cases the Petitioner "dismiss[ed] these cases on technicalities," to the disapproval of her superiors, Id.

The foregoing circumstances led Petitioner to leave Cuba. Petitioner is a proponent for the ideals of a democratic society and would make an excellent member of a democratic society.

If the Department of Homeland Security is successful in physically removing the Petitioner from the United States under the expedited order of removal, she will be unable to re-enter the United States of America for a period of five (5) years after her physical removal. 8 U.S.C. §1182(a)(9)(A)(i).

The foregoing circumstances should not be the end result of someone who embraces the ideals encompassed in the Constitution United States as evident by her actions that were contrary to the Castro regime.

Removal proceedings under 8 U.S.C. §1229a would allow the Petitioner the adequate means in which to properly pursue an asylum claim or other applications for relief including an application to adjust her status to that of lawful permanent resident of the United States pursuant to the Cuban Adjustment Act, when eligible for same.

The Petitioner is detained in a jail in Texas awaiting her unlawful "expedited removal" from the United States on July 28, 2005.

United States District Courts in fact have followed Congress' grant of habeas corpus jurisdiction to specifically allow *habeas corpus* proceedings in a United States District Court.

In *American-Arab Anti-Discrimination Comm. v. Ashcroft*, 272 F. Supp. 2d 650, 671 (D. Mich., 2003), a United States District Court granted the petitioner's writ of *habeas corpus* due to Department of Homeland Security's misapplication of expedited removal proceedings to the petitioners.

While due process is curtailed in the Petitioner's case due to her being an alien who technically has not gained entry in to the United States, the Petitioner nevertheless possess the "right to have the immigration laws lawfully applied to" her. Id at *American-Arab Anti-Discrimination Comm. v. Ashcroft*, 671.

Had the United States District Court, Western District of Texas, Waco Division, followed the reasoning in *American-Arab Anti-Discrimination Comm. v. Ashcroft* it could have issued the Petitioner's writ of *habeas corpus*.

16

Nonetheless, the United States District Court, Western District of Texas, Waco Division, erroneously transferred the Petitioner' writ of habeas corpus pursuant to the amendments contained in the REAL ID Act. [3]

A review of the relevant statute and its amendments as contained in the REAL ID Act reflects that the amendments requiring transfer of petitions for writs of *habeas corpus* to an appellate court or the necessity to file a writ of *habeas corpus* in an appellate court subsequent to the enactment of the REAL ID Act pertain only to petitions for writ of *habeas corpus* challenging standard *orders of removal* entered pursuant to 8 U.S.C. §1229a proceedings and ***not*** to expedited orders of removal pursuant to 8 U.S.C. §1225.

Presumably, and without stating so, in its order dismissing the Petitioner's petition for writ of habeas corpus (Exhibit O), the United States Court of Appeals without difficulty was able to dismiss the Petitioner' petition for writ of *habeas corpus* for lack of jurisdiction since judicial review of "expedited removal proceedings" is barred by 8 U.S.C. §1252(a)(1) and covered only under 8 U.S.C. §1252(e). See 8 U.S.C. §1252(a)(2).

Petitioner has sought judicial review of the Department of Homeland Security's determination to institute "expedited removal proceedings" against her in a U.S. District Court which then erroneously transferred her case to the United States court of appeals. The United States Court of Appeals for the Fifth Circuit dismissed the Petitioner' petition for writ of habeas corpus for lack of jurisdiction.

---

[3]    Notably, the only *habeas corpus* petitions which may be transferred to a court of appeals pursuant to the REAL ID Act are *habeas corpus* petitions "pending in a district court on the date of the enactment of this division." Section 106(c) titled "*Transfer of Cases*" of the Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005, known also as the "REAL ID" Act, *See* Public Law 109-13, 119 Stat. 231, enacted on May 11, 2005. Abreu-Gomez filed her writ of habeas corpus on in the United States District Court, Western District of Texas, Waco Division, on June 6, 2005, several weeks *after* the enactment of the REAL ID Act.

To date, no court has reviewed the merits of the Petitioner's claim that the Department of Homeland Security's misapplication of "expedited removal proceedings" to the Petitioner.

**WHEREFORE**, for the foregoing reasons, and for good cause shown, the Petitioner respectfully request that this Honorable Court GRANT the instant emergency writ of habeas corpus, stay the Petitioner's expedited removal from the United States to allow this Honorable Court's review of the Department of Homeland Security's determination to place the Petitioner in "expedited removal proceedings," including any other relief that may be available to the Petitioner and that this Honorable Court may deem as just and proper.

Respectfully Submitted,

Fatima A. Abreu-Gomez, Petitioner acting *pro se*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing pleading was

mailed by U.S. Postal Service, First Class-Postage Prepaid, to the following party this

*27* day of *July*, 2005.

>     Office of the U.S. Attorney
>     District of Columbia
>     Civil Litigation Division
>     555 Fourth Street, NW
>     Washington, D.C.  20530

and,

>     United States Department of Justice
>     Shelley R. Goad, Attorney
>     Office of Immigration Litigation
>     Civil Division
>     U.S. Department of Justice
>     P.O. Box 878, Ben Franklin Station
>     Washington, DC 20044

Fatima A. Abreu-Gomez, Petitioner acting *pro se*
c/o Oriol De Armas
Apt. 214
750 N.W. 43 Ave.
Miami, Fl. 33126
Tel:  305-446-8686
Fax:  305-529-0445

# "EXHIBIT    A"

Republic of Cuba
State Civil Registry
BIRTH CERTIFICATE

47517

To be utilized for:        □ National Territory                Exemption □
To take effect for:        □ Other countries for prior legalization    Taxes    □
                                                Law No. 73 of 4-8-94

INSCRIPTION   DATE OF ENTRY        Registered in the State of Havana
Tome/ Page        Day/Month/Year   Municipality: Central Havana   Province: Havana

REGISTRY INFORMATION

Name:        Fatima Aliet Abreu Gomez
Place of Birth:
Municipality:                                Province: Havana
..........................................9-10-1971..................................Female..............
                        Date of Birth                        Sex

Father's Name:        Cesar Abreu Franco
Natural of: Santo Domingo
Mother's Name:        Gladys Gomez Leal
Natural of: Santa Clara

Paternal Grandparents: Jose -        y    Laura
Maternal Grandparents: Eligia        y Elaina

Registered with virtue by: Declaration of the mother

OBSERVATIONS:

THE REGISTRY OF THE CIVIL STATE AT:  Plaza of the Revolution  City of Havana

CERTIFICATE:

Made for: .................................... Date of Issuance: 12-5-2005
                                                Date/month/year
                        STATE CIVIL REGISTRY
                        Signed and Stamped

The undersigned, Matthew J. Archambeault, certify that I am qualified in both languages,
English and Spanish and that to the best of my knowledge and belief, the foregoing is an
accurate translation of the attached original document in the Spanish language.

05 1508

_____
Matthew J. Archambeault

FILED

JUL 2 9 2005

NANCY MAYER WHITTINGTON CLERK

47517

REPUBLICA DE CUBA
REGISTRO DEL ESTADO CIVIL
CERTIFICACION DE NACIMIENTO

EXENTA
GRAVADA
LEY No. 73 DE 44 PM

Para ser utilizada en:
☐ Territorio Nacional
☐ Otros países previa
legalización

INSCRIPCION          FECHA DE ASIENTO
Tomo    Folio        Día | Mes | Año
50  / 55             3 | 11 | 1971          Nombre del Estado Civil de - _Habana_ - _La Habana_ - Provincia _Ciudad de la Habana_

DATOS DE LA INSCRIPCION

Nombre (s) y apellidos: _Latino Abel Abreu Gómez_ -

Lugar de nacimiento: _La Habana_ - Provincia: _La Habana_ -

Municipio: _Habana Territorial_ Sexo _Femenino_ -

                                                Fecha de nacimiento _3 - 10 - 1971_ -

Nombre (s) y apellidos del padre: _Luis Abel Abreu Estanes_ -

Natural de: _Santo Domingo_ -

Nombre (s) y apellidos de la madre: _Nidia Gómez Lek_ -

Natural de: _San José Filabo_ -

# "EXHIBIT    B"

U. S. Department of Justice

Immigration and Naturalization Service

# Notice of Referral to Immigration Judge

| | |
|---|---|
| **Date** 05/02/2005 | |
| **A-File** 98 716 947 | |

| | |
|---|---|
| **Name** Fatima A. Abreu Gomez | **Country of Citizenship** Spain/Cuba |
| **Place and Manner of Arrival** Brownsville, TX.  /Afoot | **Date of Arrival** 04/25/2005 |

**To immigration judge:**

☒ 1. The above-named alien has been found inadmissible to the United States and ordered removed pursuant to section 235(b)(1) of the Immigration and Nationality Act (Act). A copy of the removal order is attached. The alien has requested asylum and/or protection under the Convention against Torture and the matter has been reviewed by an asylum officer who has concluded the alien does not have a credible fear of persecution or torture. The alien has requested a review of that determination in accordance with section 235(b)(1)(B)(iii)(III) of the Act and 8 CFR § 208.30(g).

☐ 2. The above-named alien arrived in the United States as a stowaway and has been ordered removed pursuant to section 235(a)(2) of the Act. The alien has requested asylum and/or withholding of removal under the Convention against Torture and the matter has been reviewed by an asylum officer who has concluded the alien does not have a credible fear of persecution or torture. The alien has requested a review of that determination in accordance with section 235(b)(B)(iii)(III) of the Act.

☐ 3. The above-named alien arrived in the United States in the manner described below and has requested asylum and/or withholding of removal under the Convention against Torture. The matter is referred for a determination in accordance with 8 CFR 208.2(c). Arrival category (check one):

☐ Crewmember/applicant     ☐ Crewmember/refused     ☐ Crewmember/landed
☐ Crewmember/violator     ☐ VWP/applicant     ☐ VWP/violator
☐ 235(c) order     ☐ S-visa nonimmigrant     ☐ Stowaway: credible fear determination attached

☐ 4. The above-named alien has been ordered removed by an immigration officer pursuant to section 235(b)(1) of the Act. A copy of the removal order is attached. In accordance with section 235(b)(1)(C) of the Act, the matter is referred for review of that order. The above-named alien claims to be (check one):

☐ a United States citizen     ☐ a lawful permanent resident alien
☐ an alien granted refugee status under section 207 of the Act     ☐ an alien granted asylum under section 208 of the Act.

☐ 5. The above-named alien has been ordered removed pursuant to section 238(b) of the Act, or the Immigration and Naturalization Service (INS) has reinstated a prior exclusion, deportation, or removal order of the above-named alien pursuant to section 241(a)(5) of the Act. A copy of the removal order and, if applicable, the notice of reinstatement, are attached. The alien has expressed fear of persecution or torture and the claim has been reviewed by an asylum officer who has concluded the alien **does not** have a reasonable fear of persecution or torture. The alien has requested a review of that determination in accordance with 8 CFR §§ 208.31(f) and (g).

☐ 6. The above-named alien has been ordered removed pursuant to section 238(b) of the Act, or the INS has reinstated a prior exclusion, deportation, or removal order of the above-named alien pursuant to section 241(a)(5) of the Act. A copy of the removal order and, if applicable, the notice of reinstatement, are attached. The alien has expressed fear of persecution or torture and the claim has been reviewed by an asylum officer who has concluded the alien **has** a reasonable fear of persecution or torture. The matter is referred for a determination in accordance with 8 CFR § 208.31(e).

☐ 7. The Commissioner of the INS has determined that the release from custody of the above-named alien who is under a final order of removal would pose a special danger to the public according to the standards set in 8 CFR § 241.14 and has therefore invoked procedures to continue the alien's detention even though there is no significant likelihood that the alien will be removed from the United States in the reasonably foreseeable future. The matter is referred to the immigration judge for a review of this determination in accordance with 8 CFR § 241.14 (g).

JUL 29 2005

Form I-863 (rev. 10/24/02)N

05 1508

# "EXHIBIT     C"

U.S. Department of Justice

Immigration and Naturalization Service

**Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act**

Office: **BROWNSVILLE-MATAMOR. TX, POE**                File No: **A098 716 947**

Statement by: **FATIMA A. ABREU GOMEZ**

In the case of: **FATIMA A. ABREU GOMEZ**

Date of Birth: **October 9, 1971**                Gender (circle one):   Male   **Female**

At: **BROWNSVILLE-MATAMOR. TX, POE**                Date: **April 25, 2005**

Before: **VILMA JIMENEZ**                                            **CBP OFFICER**
                              (Name and Title)

In the **SPANISH**          language.  Interpreter _____   Employed by _____

I am an officer of the United States Immigration and Naturalization Service.  I am authorized to administer the immigration laws and to take sworn statements.  I want to take your sworn statement regarding your application for admission to the United States.  Before I take your statement, I also want to explain your rights, and the purpose and consequences of this interview.

You do not appear to be admissible or to have the required legal papers authorizing your admission to the United States.  This may result in your being denied admission and immediately returned to your home country without a hearing.  If a decision is made to refuse your admission into the United States, you may be immediately removed from this country, and if so, you may be barred from reentry for a period of 5 years or longer.

This may be your only opportunity to present information to me and the Immigration and Naturalization Service to make a decision.  It is very important that you tell me the truth.  If you lie or give misinformation, you may be subject to criminal or civil penalties, or barred from receiving immigration benefits or relief now or in the future.

Except as I will explain to you, you are not entitled to a hearing or review.

   U.S. law provides protection to certain persons who face persecution, harm or torture upon return to their home country.  If you fear or have a concern about being removed from the United States or about being sent home, you should tell me so during this interview because you may not have another chance.    You will have the opportunity to speak privately and confidentially to another officer about your fear or concern.  That officer will determine if you should remain in the United States and not be removed because of that fear.

Until a decision is reached in your case, you will remain in the custody of the Immigration and Naturalization Service.

Any statement you make may be used against you in this or any subsequent administrative proceeding.

Q. Do you understand what I've said to you?
A. YES.

Q. Do you have any questions?
A. NO.

Q. Are you willing to answer my questions at this time?
A. YES.

Q. Do you swear or affirm that all statements you are about to make are true and complete?
A. YES.

Q. What is your complete and correct name?
A. FATIMA ALIET ABREU GOMEZ.

Q. Have you used other names before today?
A. NO.
   ...(CONTINUED ON I-831)

Page 1 of 4

FA AG

**05 1508**

**FILED**
I-867A (4-1-97)

JUL 2 9 2005

NANCY MAYER WHITTINGTON, CLERK

**U.S. Department of Justice**
Immigration and Naturalization Service

Continuation Page for Form __I-867A__

| Alien's Name | File Number | Date |
|---|---|---|
| FATIMA A. ABREU GOMEZ | A098 716 947 | April 25, 2005 |

**Q.** What is your date of birth?
**A.** OCTOBER 9, 1971.

**Q.** Where were you born?
**A.** CUBA.

**Q.** Of what country are you a citizen?
**A.** CUBA.

**Q.** Of what country are your parents citizens?
**A.** CUBA.

**Q.** Where do your parents reside?
**A.** CUBA.

**Q.** Have either of your parents ever resided in the United States?
**A.** NO.

**Q.** Were either of your parents ever U.S. citizens?
**A.** NO.

**Q.** Do you have any claim to U.S. citizenship?
**A.** NO.

**Q.** Have you ever lived in the U.S.?
**A.** NO.

**Q.** Have you ever had any legal documents to enter or reside in the U.S.?
**A.** YES, I HAVE ENTERED WITH A VISA.

**Q.** What was the purpose of your trip to the U.S. today?
**A.** I NEED TO LIVE IN THE UNITED STATES.  POLITICAL ASYLUM.  I CANNOT RETURN TO CUBA.

**Q.** What document did you present to the inspector when you attempted to enter the U.S. today?
**A.** BIRTH CERTIFICATE AND CUBAN IDENTIFICATION CARD.

**Q.** Why are you seeking asylum?
**A.** BECAUSE I AM AFRAID OF RETURNING TO CUBA.

**Q.** Have you ever been to the U.S. before today?
**A.** YES,  AT THE BEGINING OF THIS YEAR.

**Q.** Where did you go and how long did you stay?
**A.** MIAMI.  I STAYED FOR 1 WEEK OR 10 DAYS.

**Q.** Have you ever been arrested by the police in Cuba or the U.S.?
**A.** NO.

**Q.** Have you ever been arrested by the Immigration and Naturalization Service of the U.S.?
**A.** NO.

**Q.** When and how did you leave Cuba?
**A.** DECEMBER OF 1998 BY AIRPLANE.  ...(CONTINUED ON NEXT PAGE)    FAAG

| Signature | | Title |
|---|---|---|
| VILMA JIMENEZ | | CBP OFFICER |

_2_ of _3_ Pages

Form I-831 Continuation Page (Rev. 6/12/92)

**U.S. Department of Justice**
Immigration and Naturalization Service

Continuation Page for Form __I-867A__

| Alien's Name | File Number | Date |
|---|---|---|
| FATIMA A. ABREU GOMEZ | A098 716 947 | April 25, 2005 |

Q. Where did you go after departing Cuba?
A.  SPAIN.

Q. How long did you stay in Spain?
A. ALL THIS TIME.   SIX YEARS.

Q. What document did you use to enter Mexico?
A. A SPANISH PASSPORT AND VISA.

Q. Where is your Cuban passport now?
A. IT WAS STOLEN.

Q. Do you have citizenship in  more than one country.
A. YES, SPAIN.

Q. Do you possess more than one passport.
A. YES. SPAIN.

Q. Where is the Spanish passport now?
A. IT WAS ALSO STOLEN ALONG WITH THE CUBAN ONE.

Q. How did you arrive in Matamoros TA Mexico?
A. IN A PRIVATE VEHICLE AND THEN I TOOK A TAXI.

Q. How much did you pay for your transportation from Cuba to Matamoros?
A.  NOTHING FROM CUBA.

Q. How much did you pay for your transportation from Spain to Matamoros?
A. ABOUT 800 EUROS.

Q. Have you or any member of your family ever belonged to or been associated with any
organizations or groups in your home country?
A. NO.

Q. Have you or any member of your family ever been mistreated or threatened by the
authorities of your home country or any other country?
A. NOT MY FAMILY.

Q. Have you or any member of your family ever been accused, arrested, detained, convicted
and sentenced, or imprisoned in your country or any other country, including the U.S.?
A. NO.

Q. Have you understood all the questions you have answered?
A. YES.

Q. Do you have anything to add to this statement?
A. NO.

FAAG.

| Signature | Title |
|---|---|
| VILMA JIMENEZ | CBP OFFICER |

Form I-831 Continuation Page (Rev. 6/12/92)

U.S. Department of Justice

• Immigration and Naturalization Service

**Jurat for Record Sworn Statement in
Proceedings under Section 235(b)(1) of the Act**

Q: Why did you leave your home country or country of last residence?

A. MY OBJECTIVE WAS TO COME TO THE UNITED STATES.  I WENT TO SPAIN BECAUSE I HAD TO
GET TO WHEREVER I COULD.  I LEFT BECAUSE IT IS A RACIST COUNTRY AND I DON'T WANT TO
BE THERE.

Q. Do you have any fear or concern about being returned to your home country or being removed from the United States?

A. YES.

Q. Would you be harmed if you are returned to your home country or country of last residence?

A. YES.

Q. Do you have any question or is there anything else you would like to add?

A. NO.

FAAG.

I have read (or have had read to me) this statement, consisting of 4 pages (including this page).  I
state that my answers are true and correct to the best of my knowledge and that this statement is a full,
true and correct record of my interrogation on the date indicated by the above named officer of the
Immigration and Naturalization Service.  I have initialed each page of this statement (and the
corrections noted on page(s) ____(0)____ ).

X

Signature: FATIMA A. ABREU GOMEZ

Sworn and subscribed to before me at BROWNSVILLE-MATAMOR. TX, POE
on April 25, 2005 .

VILMA JIMENEZ
CBP OFFICER
Officer, United States Immigration and Naturalization Service

Witnessed by: _____

Page 4 of 4

I-867B (4-1-97)

# "EXHIBIT    D"

**U.S. Department of Justice**
Immigration and Naturalization Service

**Record of Negative Credible Fear Finding
and Request for Review by Immigration Judge**

Alien File Number   98716947

1.     **To be explained to the alien by the asylum officer:**

The INS has determined that you do not have a credible fear of persecution or torture pursuant to 8 CFR 208.30 for the following reason(s):

A.     You have not established a credible fear of return to your country of nationality or country of last residence because:

☐   You have not indicated that you were harmed in the past and you have not expressed fear of future harm.

☐   There is no significant possibility that you could establish in an asylum hearing that the harm you experienced and/or the harm you fear is on account of one or more of the five grounds for asylum (race, religion, nationality, political opinion, or social group).

☒   You have not indicated that you were harmed in the past, and there is no significant possibility that you could establish in an asylum hearing that the harm you fear is well founded.

     **AND**

☒   You have not expressed a fear that you would be intentionally subjected to serious physical or mental harm in a country to which you may be removed.

☐   There is no significant possibility you could establish that the harm you fear would be inflicted by, or at the instigation of, or with the consent or acquiescence of, a government official or other person acting in an official capacity.

B.     There is no significant possibility that your claim is credible because your testimony was inconsistent or lacked detail on material issues.  When you were given an opportunity to explain you were unable to give a reasonable explanation about the following issues:

☐   Your testimony was internally inconsistent on material issues.

☐   Your testimony was not consistent with country conditions on material issues.

☐   Your testimony lacked reasonably sufficient detail on material issues.

Therefore, you are ordered removed from the United States.  You may request that an Immigration Judge review this decision.

If you request that an Immigration Judge review this decision, you will remain in detention until an Immigration Judge reviews your case.  That review will occur as long as 7 days after you receive this decision.

If you do not request that an Immigration Judge review the decision, you may be removed from the United States immediately.

2.     **To be completed by the alien:**

☒   Yes, I request Immigration Judge review of the decision that I do not have a credible fear of persecution or torture.

☐   No, I do not request Immigration Judge review of the decision that I do not have a credible fear of persecution or torture.

ABREU GOMEZ                FATIMA              X _____
Applicant's Last Name/ Family Name (Print)    Applicant's First Name (Print)    Applicant's Signature    5-9-05

Cubbad                     ALi                 05/09/05
Asylum Officer's Last Name (Print)    Asylum Officer's First Name, (Print)    Date

The contents of this form were read and explained to the applicant in the   SPANISH   language   05 1508

Interpreter used:                                                              **FILED**

By telephone (list interpreter service /ID number used    LSA #200323  .

In person (I, _____, certify that I am fluent in both the _____ and English languages.  I interpreted the above    JUL 2 9 2005
information completely and accurately to the alien.)

                                                                              NANCY MAYER WHITTINGTON, CLERK
_____        ___/___/___                                    U.S. DISTRICT COURT
Interpreter's Signature           Date

                                                                              Form I-869 (Rev. 3/22/99)N

# "EXHIBIT    E"

**U.S. Department of Justice**

Immigration and Naturalization Service

## Notice and Order of Expedited Removal

---

## DETERMINATION OF INADMISSIBILITY

File No: **A098 716 947**

Date: **April 25, 2005**

In the Matter of: **FATIMA A. ABREU GOMEZ**

Pursuant to section 235(b)(1) of the Immigration and Nationality Act (Act), (8 U.S.C. 1225(b)(1)), the Immigration and Naturalization Service has determined that you are inadmissible to the United States under section(s) 212(a)  ☐ (6)(C)(i);  ☐ (6)(C)(ii);  ☒ (7)(A)(i)(I);  ☐ (7)(A)(i)(II);  ☐ (7)(B)(i)(I); and/or  ☐ (7)(B)(i)(II) of the Act, as amended, and therefore are subject to removal, in that:

1) **You are ineligible for admission to the United States because:**

**At the time of your application for admission to the United States you were not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act, and/or**

**At the time of your application for admission, you were not in possession of a valid unexpired passport, or other suitable travel document, or document of identity and nationality.**

V. JIMENEZ, CBPO
_____
Name and title of immigration officer (Print)

_____
Signature of immigration officer

---

## ORDER OF REMOVAL
## UNDER SECTION 235(b)(1) OF THE ACT

Based upon the determination set forth above and evidence presented during inspection or examination pursuant to section 235 of the Act, and by the authority contained in section 235(b)(1) of the Act, you are found to be inadmissible as charged and ordered removed from the United States.

_____
Name and title of immigration officer (Print)

_____
Signature of immigration officer

CHRISTOPHER VU, AO

RICHARD RHODIE, SAPSO
_____
Name and title of supervisor (Print)

_____
Signature of supervisor, if available

05 1508

☑ Check here if supervisory concurrence was obtained by telephone or other means (no supervisor on duty).

---

### CERTIFICATE OF SERVICE

FILED

I personally served the original of this notice upon the above-named person on ___05/20/05___  JUL 2 9 2005
(Date)

J. LUNA
_____
Signature of immigration officer

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Form I-860 (Rev. 4-1-97)

"EXHIBIT    F"

U. S. Department of Justice
Immigration and Naturalization Service

**Notice of Referral to Immigration Judge**

### NOTICE TO APPLICANT

You are ordered to report for a hearing before an immigration judge for the reasons stated above. Your hearing is scheduled on

(To be determined)

_____    at    _____    You are to appear at: P.I. S.P.C., RT 3, Box 341,

_____(Date)_____            _____(Time)_____

_____ LOS FRESNOS, TX, 78566

                                            (complete office address)

☒ You may be represented in this proceeding, at no expense to the government, by an attorney or other individual authorized and qualified to represent persons before an Immigration Court. If you wish to be so represented, your attorney or representative should appear with you at this hearing. In the event of your release from custody, you must immediately report any change of your address to the Immigration Court on Form EOIR-33, which is provided with this notice. If you fail to appear for a scheduled hearing, a decision may be rendered in your absence.

☒ You may consult with a person or persons of your own choosing prior to your appearance in Immigration Court. Such consultation is at no expense to the government and may not unreasonably delay the process.

☒ Attached is a list of recognized organizations and attorneys that provide free legal service.

_____ /Asylum officer

(Signature and title of immigration officer)

### CERTIFICATE OF SERVICE

☒ The contents of this notice were read and explained to the applicant in the SPANISH language.

☒ The original of this notice was delivered to the above-named applicant by the undersigned on 5/09/05 and the alien has been advised of communication privileges pursuant to 8 CFR 236.1(e). Delivery was made:

☒ in person            ☐ by certified mail, return receipt requested            ☐ by regular mail

_____ /Asylum officer

(Signature and title of immigration officer)

Attachments to copy presented to immigration judge:

] Passport                        ☐ Form I-860
] Visa                            ☒ Form I-869
] Form I-94                       ☐ Form I-898
] Forensic document analysis      Asylum officer's reasonable fear determination worksheet (I-899)
] Fingerprints and photographs
] EOIR-33                         ☒ Asylum officer's credible fear determination worksheet (I-870)

] FOR 8 CFR 241.14(f) CASES ONLY: Written statement including summary of the basis for the Commissioner's determination to continue the alien's detention and description of the evidence relied on in finding the alien specially dangerous (with supporting documents attached).

] EOIR 8 CFR 241.14(f) CASES ONLY: Written notice advising the alien of initiation of proceedings and informing alien of procedures governing the Reasonable Cause Hearing at 8 CFR 241.14(h).

] Other (specify): _____

05 1508
FILED
JUL 29 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Form I-863 (rev. 10/24/02)N

"E X H I B I T     G "

# *Eduardo Soto, P.A.*

**Attorney At Law**

May 14, 2005

U.S. Immigration and Customs Enforcement
Port Isabel Service Processing Center
ATTN: Officer-in-Charge Aaron L. Cabrera
Rt. 3 Box 341 Buena Vista Rd.
Los Fresnos, Texas 78566
(956) 547-1700

RE:    **FATIMA ALIET ABREU GOMEZ  A# 98-716-947**

Dear Officer Cabrera:

The purpose of this correspondence is to ask for the exercise of discretion in paroling Fatima Aliet Abreu Gomez into the United States and releasing her from custody pursuant to section 212(d)(5)(A) of the Immigration and Nationality Act.

Ms. Abreu is a Cuban national who currently also holds Spanish citizenship.  If Ms. Abreu were to be released from custody and paroled into the United States, she would be eligible to apply and receive adjustment to permanent residence status pursuant to the Cuban Adjustment Act after one year and one day.

The fact that Ms. Abreu now holds Spanish citizenship does not disqualify her for adjustment pursuant to the CAA. *See AAO Dec. 16, 2002 (AAO held that a Cuban born Venezuelan citizen could adjust pursuant to the CAA.)* Ms. Abreu attempted to enter the United States with her boyfriend and planned to travel to Miami, Florida to begin her life here in the United States.

She will be staying with Estrella Fernandez, her boyfriend's mother, at 750 N.W. 43rd Avenue #214, Miami, Florida 33126.  The home phone number there is 305-442-8230 and Estrella's phone number is 786-287-9232.

Ms. Abreu has two job offers waiting for her once she arrives in Miami.  B&T Physical Rehabilitation Center at 7319 N.W. 36th Street, Miami, FL 33166 is offering her a position as a full-time assistant manager at a rate of $10 per hour.  Also, Credit Data Systems has offered her a full time office clerk position at $8.50 per hour.

Ms. Abreu will not become a public charge and will become a productive member of our society if paroled into the U.S.  Furthermore, she will be prima facie eligible to adjust status to that of a permanent resident one year after her parole.

05  1508

**FILED**

JUL 2 9 2005

NANCY MAYER WHITTINGTON, CLERK

999 Ponce de Leon Blvd • Suite 940 • Coral Gables, Florida 33134
Phones (305) 446-6686 / 444-5729 / 448-7697 • Fax (305) 529-0445

Ms. Abreu has many family and friends awaiting her arrival in Miami and that are willing to help her adjust and thrive her in the United States.  We humbly ask for your favorable discretion in this matter.

Thank you for your attention.

Sincerely,

Matthew J. Archambeault
Attorney at Law

Enclosures

"EXHIBIT     H"

IMMIGRATION COURT
RT 3 BOX 341  BUENA VISTA DR
LOS FRESNOS, TX  78566

In the Matter of:                    Case No:  A98-716-947

ABREU-GOMEZ, FATIMA A.

                                     IN: CREDIBLE FEAR REVIEW PROCEEDINGS
_____
        Respondent


ORDER OF THE IMMIGRATION JUDGE


On May 16, 2005 ~at~    a review of the INS Credible Fear Determination
was held in the matter noted above.  Testimony [✓] was  [ ] was not
taken regarding the background of the Applicant and the Applicant's fear
of returning to his/her country of origin or last habitual residence.

After consideration of the evidence, the Court finds that the Applicant
[ ] has  [✓] has not established a significant possibility that he/she
would be persecuted on the basis of his/her race, religion, nationality,
membership in a particular social group, or because of his/her political
opinion or tortured in Spain.


ORDER:  It is hereby ordered that the decision of the immigration officer is:

    [✓]  Affirmed, and the case is returned to the INS for removal of the
         alien.

    [ ]  Vacated.

    This is a final order.  There is no appeal available.


DONE and ORDERED this  16Th  day of  May  , 2005  .

                              Howard Achtsam    05 1508
                              _____
                              HOWARD E. ACHTSAM
                              Immigration Judge

_____
                        CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:  MAIL (M)    PERSONAL SERVICE (P)      FILED
TO:  [✓] ALIEN  [ ] ALIEN c/o Custodial Officer) [✓] ALIEN's ATT/REP  [✓] INS
DATE:  5/16/05        BY:  COURT STAFF  _J. Martinez_             JUL 2 9 2005
       Attachments:   [ ] EOIR-33   [ ] EOIR-28   [✓] Legal Services List  [ ] Other
_____
                                        NANCY MAYER WHITTINGTON, CLERK
                                             U.S. DISTRICT COURT
                                                   02

GPI

# "EXHIBIT     I"

U.S. Department of Homeland Security
Rt. 3 Box 341
Los Fresnos, Texas 78566



**U.S. Immigration
and Customs
Enforcement**

May 18, 2005

Eduardo Soto, P.A.
C/O Attorney Matthew J. Archambeault
999 Ponce De Leon Blvd., Suite 940
Coral Gables, FL 33134

                    RE: Fatima Aliet ABREU-Gomez; A98 716 947

Dear Mr. Archambeault,

This is in response to the request that your client be released on parole dated May 14, 2005. Your
client was issued an Expedited Removal Order on April 25, 2005 as a Cuban National and she was
referred to asylum for credible fear. The Asylum Officer found that your client had resettled in
Spain and found no credible fear, so she was referred to an Immigration Judge. On May 16, 2005,
an Immigration Judge affirmed that no credible fear was established and a final order of removal is
outstanding. Your client will be removed to Spain as soon as a travel document can be secured.
Therefore, your request for parole is denied.

                         Sincerely,

                         *[signature]*

                         Aaron L. Cabrera
                         Officer in Charge
                         Port Isabel Detention Center

05 1508

**FILED**

JUL 2 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# "EXHIBIT     J"

(OMB) for review and clearance under the Paperwork Reduction Act of 1995.

**DATES:** Fax written comments on the collection of information by September 10, 2004.

**ADDRESSES:** OMB is still experiencing significant delays in the regular mail, including first class and express mail, and messenger deliveries are not being accepted. To ensure that comments on the information collection are received, OMB recommends that written comments be faxed to the Office of Information and Regulatory Affairs, OMB, Attn: Fumie Yokota, Desk Officer for FDA, FAX: 202–395–6974.

**FOR FURTHER INFORMATION CONTACT:** Karen L. Nelson, Office of Management Programs (HFA–250), Food and Drug Administration, 5600 Fishers Lane, Rockville, MD 20857, 301–827–1482.

**SUPPLEMENTARY INFORMATION:** In compliance with 44 U.S.C. 3507, FDA has submitted the following proposed collection of information to OMB for review and clearance.

**Draft Guidance for Industry on Pharmacogenomic Data Submissions (OMB Control Numbers 0910–0014, 0910–0001, and 0910–0338)—Extension**

The guidance provides recommendations to sponsors submitting or holding investigational new drugs (INDs), new drug applications (NDAs), or biologic licensing applications (BLAs) on what pharmacogenomic data should be submitted to the agency during the drug development process. Sponsors holding and applicants submitting INDs, NDAs, or BLAs are subject to FDA requirements in parts 312, 314, and 601 (21 CFR 312, 314, and 601) for submitting to the agency data relevant to drug safety and efficacy (§§ 312.22, 312.23, 312.31, 312.33, 314.50, 314.81, 601.2, and 601.12).

*Description of Respondents:* Sponsors submitting or holding INDs, NDAs, or BLAs for human drugs and biologics.

*Burden Estimate:* The guidance interprets FDA regulations for IND, NDA, or BLA submissions, clarifying when the regulations require pharmacogenomics data to be submitted and when the submission of such data is voluntary. The pharmacogenomic data submissions described in the guidance that are required to be submitted to an IND, NDA, BLA, or annual report are covered by the information collection requirements under parts 312, 314, and 601 and are approved by OMB under control numbers 0910–0014 (part 312—INDs; approved until January 1, 2006); 0910–0001 (part 314—NDAs and annual reports; approved until March 31, 2005); and 0910–0338 (approved until August 31, 2005).

The guidance distinguishes between pharmacogenomic tests that may be considered valid biomarkers appropriate for regulatory decisionmaking, and other, less well developed exploratory tests. The submission of exploratory pharmacogenomic data is not required under the regulations, although the agency encourages the voluntary submission of such data.

The guidance describes the voluntary genomic data submission (VGDS) that can be used for such a voluntary submission. The guidance does not recommend a specific format for the VGDS, except that such a voluntary submission be designated as a VGDS. The data submitted in a VGDS and the level of detail should be sufficient for FDA to be able to interpret the information and independently analyze the data, verify results, and explore possible genotype-phenotype correlations across studies. FDA does not want the VGDS to be overly burdensome and time-consuming for the sponsor.

FDA has estimated the burden of preparing a voluntary submission described in the guidance that should be designated as a VGDS. Based on FDA's familiarity with sponsors' interest in submitting pharmacogenomic data during the drug development process, FDA estimates that approximately 20 sponsors will submit approximately 80 VGDSs and that, on average, each VGDS will take approximately 10 hours to prepare and submit to FDA.

In the **Federal Register** of November 4, 2003 (68 FR 62461), FDA published a 60-day notice requesting public comment on the information collection provisions. No comments were received on the information collection estimates.

TABLE 1.—ESTIMATED ANNUAL REPORTING BURDEN[1]

| | Number of Respondents | Number of Responses per Respondent | Total Annual Responses | Hours per Response | Total Hours |
|---|---|---|---|---|---|
| Voluntary genomic data submissions | 20 | 4 | 80 | 10 | 800 |

[1] There are no capital costs or operating and maintenance costs associated with this collection.

Dated: August 5, 2004.

Jeffrey Shuren,

*Assistant Commissioner for Policy.*

[FR Doc. 04–18360 Filed 8–6–04; 12:04 pm]

**BILLING CODE 4160–01–S**

---

**DEPARTMENT OF HOMELAND SECURITY**

**Bureau of Customs and Border Protection**

**Designating Aliens For Expedited Removal**

**AGENCY:** Bureau of Customs and Border Protection, DHS.

**ACTION:** Notice.

**SUMMARY:** This notice authorizes the Department of Homeland Security to place in expedited removal proceedings any or all members of the following class of aliens: Aliens determined to be inadmissible under sections 212(a)(6)(C) or (7) of the Immigration and Nationality Act who are present in the U.S. without having been admitted or paroled following inspection by an immigration officer at a designated port-of-entry, who are encountered by an immigration officer within 100 air miles of the U.S. international land border, and who have not established to the satisfaction of an immigration officer that they have been physically present in the U.S. continuously for the fourteen-day (14-day) period immediately prior to the date of encounter. DHS believes that exercising its statutory authority to place these individuals in expedited removal proceedings will enhance national security and public safety by facilitating prompt immigration determinations, enabling DHS to deal more effectively with the large volume of persons seeking illegal entry, and ensure removal from the country of those granted relief, while at the same time protecting the rights of the individuals affected.

05 1508

FILED

JUL 2 9 2005

NANCY MAYER WHITTINGTON, CLE
U.S. DISTRICT COURT

**DATES:** This notice is effective on August 11, 2004.

**ADDRESSES:** Please submit written comments to: Regulations Branch, Office of Regulations and Rulings, Bureau of Customs and Border Protection, 1300 Pennsylvania Avenue, NW., Washington, DC 20229. See **SUPPLEMENTARY INFORMATION** section for more details on submission of comments.

**FOR FURTHER INFORMATION CONTACT:** Dana E. Graydon, Acting Associate Chief, Office of Border Patrol, U.S. Customs and Border Protection, 1300 Pennsylvania Ave., NW., Suite 6.5–E, Washington, DC 20229, *dana.graydon@dhs.gov*, 202–344–3153.

**SUPPLEMENTARY INFORMATION:** Please submit written comments, original and two copies, to the address listed above on or before after October 12, 2004. Submitted comments may be inspected at the Office of Regulations and Rulings, Bureau of Customs and Border Protection, 799 9th Street, NW., Washington, DC, during regular business hours. Arrangements to inspect submitted comments should be made in advance by calling Mr. Joseph Clark at (202) 572–8768.

Section 302 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Public Law 104–208, Div. C, 110 Stat. 3009–546, amended section 235(b) of the Immigration and Nationality Act ("Act"), 8 U.S.C. 1225(b), to authorize the Attorney General (now the Secretary of Homeland Security as designated under the Homeland Security Act of 2002) to remove, without a hearing before an immigration judge, aliens arriving in the U.S. who are inadmissible under sections 212(a)(6)(C) or 212(a)(7) of the Act, 8 U.S.C. 1182(a)(6)(C) and 1182(a)(7). Under section 235(b)(1) of the Act, 8 U.S.C. 1225(b)(1), expedited removal proceedings may be applied to two categories of aliens. First, section 235(b)(1)(A)(i) of the Act, 8 U.S.C. 1225(b)(1)(A)(i), permits expedited removal proceedings for aliens who are "arriving in the United States." "Arriving aliens" are defined by regulation to mean "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international waters and brought into the United States by any means whether or not to a designated port-of-entry." (8 CFR 1.1(q)). Cuban citizens who arrive at U.S. ports-of-entry by aircraft are exempted from this first category of

aliens subject to expedited removal under section 235(b)(1)(F) of the Act, 8 U.S.C. 1225(b)(1)(F). Second, section 235(b)(1)(A)(iii) of the Act, 8 U.S.C. 1225(b)(1)(A)(iii), permits the Attorney General (now the Secretary of Homeland Security), in his or her sole and unreviewable discretion, to designate certain other aliens to whom the expedited removal provisions may be applied. Section 235(b)(1)(A)(iii), 8 U.S.C. 1225(b)(1)(A)(iii), authorizes the Secretary to apply (by designation) expedited removal proceedings to aliens who arrive in, attempt to enter, or have entered the U.S. without having been admitted or paroled following inspection by an immigration officer at a designated port-of-entry, and who have not established to the satisfaction of the immigration officer that they have been physically present in the U.S. continuously for the two-year period immediately prior to the date of determination of inadmissibility.

By statute, an alien present in the U.S. who has not been admitted shall be deemed for purposes of the Act to be an applicant for admission. 8 U.S.C. 1225(a), section 235(a)(1) of the Act. Once alienage has been established, an alien applicant for admission has the burden of establishing that he or she is clearly and beyond doubt entitled to be admitted and is not inadmissible under section 212 of this Act. Aliens who have not been admitted or paroled and who are subject to expedited removal under this designation have the burden of proof to show affirmatively that they are not inadmissible and have maintained the required continuous physical presence in the U.S. Any absence from the U.S. shall serve to break the period of continuous physical presence. 8 CFR 235.3(b)(1)(ii).

Pursuant to 8 CFR 235.3(b)(1)(ii) (62 FR 10312, 10355, March 6, 1997), the Attorney General provided that her designation authority would be exercised by the Commissioner of the former Immigration and Naturalization Service (INS). Pursuant to sections 102(a), 441, 1512(d) and 1517 of the Homeland Security Act of 2002, Public Law 107–296, 116 Stat. 2310, 6 U.S.C. 112, 251, 552(d), 557, and 8 CFR 2.1, the authority of the Attorney General and the Commissioner of the INS in accordance with 8 U.S.C. 235(b)(1)(A)(iii) and 8 CFR 235.3(b)(1)(ii), respectively, was transferred to the Secretary of Homeland Security, and references to the Attorney General or the Commissioner in the statute and regulations are deemed to refer to the Secretary.

DHS has a pressing need to improve the security and safety of the nation's

land borders, and expanding expedited removal between ports of entry will provide DHS officers with a valuable tool to meet that objective. Presently DHS officers cannot apply expedited removal procedures to the nearly 1 million aliens who are apprehended each year in close proximity to the borders after illegal entry. It is not logistically possible for DHS to initiate formal removal proceedings against all such aliens. This is primarily a problem along the southern border, and thus the majority of such aliens are Mexican nationals, who are "voluntarily" returned to Mexico without any formal removal order. Based upon anecdotal evidence, many of those who are returned to Mexico seek to reenter the U.S. illegally, often within 24 hours of being voluntarily returned (it is not uncommon for DHS officers to apprehend the same individual many times over a span of several months). On the southern land border with Mexico, those aliens who are apprehended who are not Mexican nationals cannot be returned to Mexico. Currently, non-Mexican nationals who are inadmissible may be voluntarily returned to their country of citizenship or nationality via aircraft, or placed in formal removal proceedings under section 240 of the Act. Because DHS lacks the resources to detain all third-country nationals (aliens who are neither nationals of Mexico nor Canada) who have been apprehended after illegally crossing into the U.S. from both the northern and southern land borders, many of these aliens are released in the U.S. each year with a notice to appear for removal proceedings. Many of these aliens subsequently fail to appear for their removal proceedings, and then disappear in the U.S.

Without limiting its ability to exercise its discretion in the event of a national emergency, other unforeseen events, or a change in circumstances, DHS plans under this designation as a matter of prosecutorial discretion to apply expedited removal only to (1) third-country nationals and (2) Mexican and Canadian nationals with histories of criminal or immigration violations, such as smugglers or aliens who have made numerous illegal entries. We recognize that certain aliens, including unaccompanied minors, members of the Class Action Settlement in *American Baptist Churches* v. *Thornburgh*, 760 F. Supp. 796 (N.D. Cal. 1991) (which settled the claims of a class of Salvadorans and Guatemalans regarding handling of asylum claims), and aliens who may be eligible for cancellation of removal under section 240A of the Act,

for example, may possess equities that weigh against the use of expedited removal proceedings. Accordingly, in appropriate circumstances and as an exercise of prosecutorial discretion, officers will be able to permit certain aliens described in this notice to return voluntarily, withdraw their application for admission, or to be placed into regular removal proceedings under section 240 of the Act in lieu of expedited removal proceedings.

In the interests of focusing enforcement resources upon unlawful entries that have a close spatial and temporal nexus to the border, this notice does not implement the full nationwide expedited removal authority available to DHS pursuant to section 235 of the Act, 8 U.S.C. 1225. Nor does this notice limit DHS from implementing the full nationwide enforcement authority of the statute through publication of a subsequent Federal Register notice. The statute provides DHS with the authority to apply expedited removal to aliens who cannot establish that they have maintained a physical presence in the U.S. continuously for the two-year period immediately prior to the date of determination of inadmissibility. The statute also does not limit geographically the application of expedited removal. At this time, DHS has elected to assert and implement only that portion of the authority granted by the statute that bears close temporal and spatial proximity to illegal entries at or near the border. Accordingly, this notice applies only to aliens encountered within 14 days of entry without inspection and within 100 air miles of any U.S. international land border.

It is anticipated under this designation that expedited removal will be employed against those aliens who are apprehended immediately proximate to the land border and have negligible ties or equities in the U.S. Nevertheless, this designation extends to a 100-mile operational range because many aliens will arrive in vehicles that speedily depart the border area, and because other recent arrivals will find their way to near-border locales seeking transportation to other locations within the interior of the U.S. The 100-mile range already has been established by regulation as a reasonable distance from the external boundary of the U.S. for the purpose of preventing the illegal entry of aliens into the U.S. See section 287(a)(3) of the Act; 8 CFR 287.1(a)(2) and (c).

The use of expedited removal orders, which prohibit reentry for a period of 5 years, will deter unlawful entry, and make it possible to pursue future

criminal prosecution against those aliens who continue to enter the U.S. in violation of law. It will also accelerate the processing of inadmissible aliens because it generally does not require an appearance before an immigration judge, except in certain circumstances. Deterring future entries and accelerating removals will enhance DHS's ability to oversee the border, and to focus its resources on threats to public safety and to national security. DHS also believes that the use of expedited removal will likely interfere with human trafficking and alien smuggling operations, which are growing in sophistication, and which induce aliens from all over the world to cross the country's borders. Alien smuggling organizations have been responsible for numerous violent crimes, including homicide, hostage-taking, and crimes involving sexual exploitation. DHS expects that the expansion of expedited removal under this notice will ultimately reduce the number of aliens who risk injury or death attempting to enter the U.S. through difficult mountainous and desert terrain, as well as decrease property crimes in border areas.

All aliens placed into expedited removal as a result of this designation will have the same rights to a credible fear screening by an asylum officer, and the right to review of an adverse credible fear determination by an immigration judge, that are provided to arriving aliens who are currently placed into expedited removal after being denied admission at a port of entry. Any alien who falls within this designation, who is placed in expedited removal proceedings, and who indicates an intention to apply for asylum or who asserts a fear of persecution or torture will be interviewed by an asylum officer who will determine whether the alien has a credible fear as defined in section 235(b)(1)(B)(v) of the Act, 8 U.S.C. 1225(b)(1)(B)(v). If that standard is met, the alien will be referred to an immigration judge for a removal proceeding under section 240 of the Act, sections 235(b)(1)(A)(ii) and (B) of the Act, 8 U.S.C. 1225(b)(1)(A)(ii) and (B); 8 CFR 235.3(b)(4). The Forms I–867A and I–867B currently used by officers who process aliens under the expedited removal program provide to all aliens in expedited removal proceedings information concerning the credible fear interview, in accordance with the statutory requirement at section 235(b)(1)(B)(iv) of the Act, 8 U.S.C. 1225(b)(1)(B)(iv). The forms require that the officer inquire whether the alien has any reason to fear harm if returned to his or her country. Officers authorized

to administer the expedited removal program will be trained to be alert for any verbal or non-verbal indications that the alien may be afraid to return to his or her homeland.

Similarly, all aliens placed into expedited removal as a result of this designation, who claim lawful permanent resident, refugee, asylee status, or U.S. citizenship will receive the same procedures, including the right to review of any adverse expedited removal order by an immigration judge, that are provided to arriving aliens making similar status claims who are currently placed in expedited removal at ports of entry under 8 CFR 235.3(b). DHS, with limited exceptions, plans to detain aliens who are placed in expedited removal under this designation. Section 235(b)(1)(B)(iii)(IV) of the Act, 8 U.S.C. 1225(b)(1)(B)(iii)(IV), and 8 CFR 235.3(b)(2)(iii) direct that any alien who is placed in expedited removal proceedings shall be detained pending a final determination of credible fear and, if found not to have such a fear, such alien shall be detained until removed. Parole of such alien under 8 CFR 235.3(b)(2)(iii) may be permitted only when the Secretary determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective. Section 235(b)(1)(B)(ii) of the Act, 8 U.S.C. 1225(b)(1)(B)(ii), directs that if a credible fear has been established, the alien shall be detained for further consideration of the protection claim or claims. Under Department of Justice regulations, immigration judge review of custody determinations is permitted only for bond and custody determinations pursuant to section 236 of the Act, 8 U.S.C. 1226, 8 CFR 1236, and 8 CFR 1003.19(a). Aliens subject to expedited removal procedures under section 235 of the Act (including those aliens who are referred after a positive credible fear determination to an immigration judge for proceedings under section 240 of the Act) are not eligible for bond, and therefore are not eligible for a bond redetermination before an immigration judge. Parole of aliens determined to have a credible fear may be considered in accordance with section 212(d)(5) of the Act, 8 U.S.C. 1182(d)(5), and 8 CFR 212.5.

The expedited removal authority implemented in this Notice will not be employed against Cuban citizens because removals to Cuba cannot presently be assured and for other U.S. policy reasons.

The Department has determined that good cause exists under the

Administrative Procedure Act (APA), 5 U.S.C. 553(b)(3)(B) and (d)(3), to exempt this notice from the notice and comment requirements under the APA. Delaying the implementation of this notice to allow public notice and comment would be impracticable, unnecessary and contrary to the public interest.

Congress explicitly authorized the Secretary of Homeland Security to designate categories of aliens to whom expedited removal proceedings may be applied, and made clear that "[s]uch designation shall be in the sole and unreviewable discretion of the Secretary and may be modified at any time." Section 235(b)(1)(A)(iii)(I) of the Act, 8 U.S.C. 1225(b)(1)(A)(iii)(I). The large volume of illegal entries, and attempted illegal entries, and the attendant risks to national security presented by these illegal entries, necessitates that DHS expand the expedited removal program as provided in this designation. DHS is confident that the experience gained through implementation of the expedited removal program at ports of entry will enable DHS to expand the program in a manner that is both effective and humane.

There is an urgent need to enhance DHS's ability to improve the safety and security of the nation's land borders, as well as the need to deter foreign nationals from undertaking dangerous border crossings, and thereby prevent the needless deaths and crimes associated with human trafficking and alien smuggling operations. The expansion of expedited removal will increase the deterrence of illegal entries by ensuring that apprehension quickly leads to removal. This is especially critical because of the environmental dangers faced by aliens illegally entering the U.S. across desert or mountainous areas. In the Arizona desert alone, since the initiation of the Arizona Border Control Initiative (ABC) in March of 2004, the Border Patrol has rescued hundreds of aliens in distress and has unfortunately discovered over 40 aliens who have died in the attempt to enter the U.S.

This designation is necessary to remove quickly from the U.S. aliens who are encountered shortly after illegally entering the U.S. across the land borders. The ability to detain aliens while admissibility and identity is determined and protection claims are adjudicated, as well as to quickly remove aliens without protection claims or claims to lawful status, is a necessity for national security and public safety. As a critical element of a number of DHS initiatives to enhance security along the border, the expansion of expedited removal will increase

national security, diminish the number of illegal entries, and impair the ability of smuggling organizations to operate. Accordingly, for the foregoing reasons, the Department has determined that public notice and comment prior to promulgation of this notice would be impracticable, unnecessary and contrary to the public interest as those terms are used under the APA.

Although the Department believes for the foregoing reasons that pre-promulgation notice and comment procedures are not statutorily mandated in this case, DHS is interested in receiving comments from the public on all aspects of the expedited removal program, but especially on the effectiveness of the program, problems envisioned by the commenters, and suggestions on how to address those problems. DHS believes that by maintaining a dialogue with interested parties, DHS can ensure that the program is even more effective in combating and deterring illegal entry, while at the same time protecting the rights of the individuals affected.

The expansion of expedited removal under this notice will also support the Arizona Border Control Initiative (ABC), a program designed to secure and protect the Arizona border. Working with other Federal, State, local and tribal entities, DHS has placed significant personnel and technical assets on the border to decrease the deaths of illegal immigrants in the desert; and to lower the rate of violent crime related to illegal border traffic in Southern Arizona. The ABC began operations in March 2004. For the reasons stated above, the ABC's success will rely in part upon the ability of DHS officers to place inadmissible aliens apprehended shortly after illegal entry into expedited removal.

Every year, illegal aliens from many different countries continue to enter the U.S. illegally across the nation's land borders. It is critical for public safety and national security that these aliens are not released into the U.S. without adequate verification of their identities and backgrounds.

**Notice of Designation of Aliens Subject to Expedited Removal Proceedings**

Pursuant to section 235(b)(1)(A)(iii) of the Immigration and Nationality Act ("Act") and 8 CFR 235.3(b)(1)(ii), I order as follows:

(1) Except as provided in paragraph (5), the Department of Homeland Security, through its component bureaus, may place in expedited removal proceedings any or all members of the following class of aliens: Aliens who are inadmissible under sections

212(a)(6)(C) or (7) of the Act, who are physically present in the U.S. without having been admitted or paroled following inspection by an immigration officer at a designated port-of-entry, who are encountered by an immigration officer within 100 air miles of any U.S. international land border, and who have not established to the satisfaction of an immigration officer that they have been physically present in the U.S. continuously for the 14-day period immediately prior to the date of encounter. Each alien subject to this notice bears the affirmative burden to show to the satisfaction of an immigration officer that the alien has been present in the U.S. continuously for the relevant 14-day period. This notice does not apply to aliens who arrive at U.S. ports-of-entry, as these aliens are already subject to expedited removal. This notice will be given effect only with respect to apprehensions made within the CBP Border Patrol sectors of (Laredo, McAllen, Del Rio, Marfa, El Paso, Tucson, Yuma, El Centro, San Diego, Blaine, Spokane, Havre, Grand Forks, Detroit, Buffalo, Swanton, and Houlton).

(2) Any alien who falls within this designation who indicates an intention to apply for asylum or who asserts a fear of persecution or torture will be interviewed by an asylum officer to determine whether the alien has a credible fear as defined in section 235(b)(1)(B)(v) of the Act, 8 U.S.C. 1225(b)(1)(B)(v). If that standard is met, the alien will be referred to an immigration judge for proceedings under section 240 of the Act, 8 U.S.C. 1229a.

(3) Any alien who is placed in expedited removal proceedings under this designation who claims lawful permanent resident, refugee, asylee status, or U.S. citizenship will be processed in accordance with the procedures provided in 8 CFR 235.3(b) and 8 CFR 1235.3(b).

(4) Any alien who is placed in expedited removal proceedings under this designation will be detained pursuant to section 235(b) of the Act, 8 U.S.C. 1225(b), with certain exceptions, until removed. However, aliens determined to have a credible fear may be considered by DHS for parole in accordance with section 212(d)(5) of the Act and 8 CFR 212.5. Aliens detained pursuant to the expedited removal provisions under section 235 of the Act (including those aliens who are referred after a positive credible fear determination to an immigration judge for proceedings under section 240 of the Act) are not eligible for bond, and therefore are not eligible for a bond

redetermination before an immigration judge.

(5) This notice applies to aliens described in paragraph (1) who are encountered within the U.S. beginning August 11, 2004.

(6) The expedited removal proceedings contemplated by this notice will not be initiated against Cuban citizens or nationals.

Dated: August 3, 2004.

**Tom Ridge,**

*Secretary of Homeland Security.*

[FR Doc. 04–18469 Filed 8–10–04; 8:45 am]

**BILLING CODE 4820–02–P**

---

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

[Docket No. FR–4903–N–63]

**Notice of Proposed Information Collection: Comment Request; Contract and Subcontract Activity**

**AGENCY:** Office of the Chief Information Officer, HUD.

**ACTION:** Notice.

**SUMMARY:** The proposed information collection requirement described below will be submitted to the Office of Management and Budget (OMB) for review, as required by the Paperwork Reduction Act. The Department is soliciting public comments on the subject proposal.

This is a request for approval of a revision to the currently approved information collection, which enables HUD to monitor and evaluate Minority Business Enterprise (MBE) activities against the total program activity and the designated MBE goals. Reports are submitted annually to Congress. This information collection combines two previously approved collections, OMB control numbers 2577–0088 and 2502–0355. OMB control number 2535–pending will now be used for this collection.

**DATES:** *Comments due:* October 12, 2004.

**ADDRESSES:** Interested persons are invited to submit comments regarding this proposal. Comments should refer to the proposal by name and/or OMB Control Number and should be sent to: Wayne Eddins, Reports Management Officer, AYO, Department of Housing and Urban Development, 451 Seventh Street, SW., Washington, DC 20410; e-mail *Wayne_Eddins@HUD.gov;* telephone (202) 708–2374. This is not a toll-free number. Copies of available documents may be obtained from Mr. Eddins and at HUD's Web site at *http:/*

*/www5.hud.gov:63001/po/i/icbts/ collectionsearch.cfm.*

**FOR FURTHER INFORMATION CONTACT:** Lillian Deitzer, Information Technology Specialist, AYO, Department of Housing and Urban Development, 451 Seventh Street, SW., Washington, DC 20410; e-mail *Lillian_L_Deitzer@HUD.gov;* telephone (202) 708–2374. This is not a toll-free number.

**SUPPLEMENTARY INFORMATION:** The Department will submit the proposed information collection to OMB for review, as required by the Paperwork Reduction Act of 1995 (44 U.S.C. Chapter 35, as amended).

This Notice is soliciting comments from members of the public and affecting agencies concerning the proposed collection of information to: (1) Evaluate whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility; (2) Evaluate the accuracy of the agency's estimate of the burden of the proposed collection of information; (3) Enhance the quality, utility, and clarity of the information to be collected; and (4) Minimize the burden of the collection of information on those who are to respond; including through the use of appropriate automated collection techniques or other forms of information technology, *e.g.,* permitting electronic submission of responses.

This Notice also lists the following information:

*Title of Proposal:* Contract and Subcontract Activity.

*OMB Control Number, if applicable:* 2535–pending.

*Description of the need for the information and proposed use:* Information will enable HUD to monitor and evaluate Minority Business Enterprise (MBE) activities against the total program activity and the designated MBE goals. Reports are submitted annually to Congress. This information collection combines two previously approved collections, OMB control numbers 2577–0088 and 2502–0355. OMB control number 2535–pending will now be used for this collection.

*Agency form numbers, if applicable:* HUD 2516.

*Estimation of the total number of hours needed to prepare the information collection including number of respondents, frequency of response, and hours of response:* An estimation of the total numbers of hours needed to prepare the information collection is 5,000, number of respondents is 5,000,

frequency of response is "annually," and the hours per response is 1 hour.

*Status of the proposed information collection:* Revision of a currently approved collection.

**Authority:** Section 3506 of the Paperwork Reduction Act of 1995, 44 U.S.C. Chapter 35, as amended.

Dated: August 4, 2004.

**Wayne Eddins,**

*Departmental Reports Management Officer, Office of the Chief Information Officer.*

[FR Doc. 04–18301 Filed 8–10–04; 8:45 am]

**BILLING CODE 4210–72–P**

---

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

[Docket No. FR–4907–N–26]

**Notice of Proposed Information Collection: Comment Request; Automated Clearing House (ACH) Program Application—Title I Insurance Charge Payments System**

**AGENCY:** Office of the Assistant Secretary for Housing—Federal Housing Commissioner, HUD.

**ACTION:** Notice.

**SUMMARY:** The proposed information collection requirement described below will be submitted to the Office of Management and Budget (OMB) for review, as required by the Paperwork Reduction Act. The Department is soliciting public comments on the subject proposal.

**DATES:** *Comments Due Date:* October 12, 2004.

**ADDRESSES:** Interested persons are invited to submit comments regarding this proposal. Comments should refer to the proposal by name and/or OMB Control Number and should be sent to: Wayne Eddins, Reports Management Officer, Department of Housing and Urban Development, 451 7th Street, SW., L'Enfant Plaza Building, Room 8001, Washington, DC 20410 or *Wayne Eddins@hud.gov.*

**FOR FURTHER INFORMATION CONTACT:** Lester J. West, Director, Financial Operations Center, Department of Housing and Urban Development, 52 Corporate Circle, Albany, NY 12203, telephone (518) 464–4200 x4206 (this is not a toll free number) for copies of the proposed forms and other available information.

**SUPPLEMENTARY INFORMATION:** The Department is submitting the proposed information collection to OMB for review, as required by the Paperwork Reduction Act of 1995 (44 U.S.C. Chapter 35, as amended).

# "EXHIBIT    K"

Office of Detention and Removal Operations
U.S. Department of Homeland Security
425 I Street, NW
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

**SEP 1 4 2004**

MEMORANDUM FOR:    All Field Office Directors

FROM:    Victor X. Cerda
Acting Director

SUBJECT:    Expedited Removal Guidance

## BACKGROUND

The Department of Homeland Security (DHS) Undersecretary for Border and Transportation Security recently announced plans to expand control of the United States borders through increased use of immigration laws to combat illegal entry between the ports-of-entry. This will be accomplished, in part, by immediately expanding the use of expedited removal (ER) processing from the ports-of-entry to locations along the United States border. The expanded authority was announced in the attached Federal Register Notice (FR). See FR 69 FR 48877-01 (August 11, 2004).

## LAREDO AND TUCSON BORDER SECTORS FIRST

ER has traditionally been employed at official ports-of-entry and has not been applied on the land borders to aliens seeking to illegally enter the United States between ports-of-entry. DHS will now apply its ER authority to certain locations along both northern and southern land borders between ports-of-entry. Border Patrol agents will be trained to exercise this authority. Border Patrol plans to initially implement this expansion of ER between the ports-of-entry in the Laredo and Tucson border sectors.

## PRIMARY FOCUS

As the extension of ER is meant as a border-enforcement tool, it will be limited to illegal aliens who have spent less than 14 days in the United States after evading inspection, and who are apprehended within 100 miles of a U. S. international land border. The primary focus of this expansion of ER is directed at "third country nationals" who are not citizens of Mexico or Canada, and who have nominal equities in and ties to the United States. DHS will retain operational discretion to place citizens of Mexico or Canada into ER proceedings, but only expects to apply it to those Mexican and Canadian citizen/nationals with histories of criminal or repeated immigration violations, such as recidivists, alien smugglers, guides, drivers, etc.

05 1508

**FILED**

JUL 2 9 2005

NANCY MAYER WHITTINGTON, CLERK

Subject: Expedited Removal Guidance
Page 2

## ER EXCEPTIONS

ER will not be applied to unaccompanied juveniles, citizens and nationals of Cuba and El Salvador, and aliens who are members of the Class Action Settlement in *American Baptist Churches v. Thornburg*, (ABC), which settled the claims of a specific class of Salvadorans and Guatemalans regarding the handling of asylum claims.

## CREDIBLE FEAR REFERRALS TO CITIZENSHIP AND IMMIGRATION SERVICES

The expansion of ER does not eliminate existing protections for individuals seeking asylum. When an alien is placed in ER, Customs and Border Protection (CBP) Border Patrol Agents must inquire whether the alien has any reason to fear harm if returned to his or her country, and will refer any alien who expresses an intention to apply for asylum, or a fear of persecution or torture, or a fear of return to his or her home country to a Citizenship and Immigration Services (CIS) Asylum Officer for a "credible fear" interview. Before remanding those aliens who have been referred to a CIS Asylum Officer for a credible fear interview to Detention and Removal Operations (DRO), CBP Border Agents are responsible for providing local CIS Asylum Offices (either by fax or electronically) with a copy of the following paperwork:

- Form I-860, *Notice and Order of Expedited Removal*

- Form I-867A, *Record of Sworn Statement and Proceedings under § 235(b)(1) of the Immigration and Nationality Act (INA)*

- Form I-867B, *Jurat for Record of Sworn Statement and Proceedings under INA § 235(b)(1)*

- M-444, *Information About Credible Fear Interview*

- List of Free Legal Services Providers

Detention of Border Patrol ER cases is under INA § 235; therefore, Form I-286, *Notice of Custody Determination*, and a Warrant of Arrest are not issued for these cases, even when a case is referred to an Immigration Judge (IJ) after a credible fear finding.

## CUSTODY

Aliens placed in ER will be processed in the Enforcement Case Tracking System, (ENFORCE), by CBP Border Patrol Agents and will normally be detained and removed by DRO as soon as possible, consistent with the legal process. In order to properly manage bed space, Field Office Directors are to maximize removal efforts, recommend alternate detention sites (if necessary), and continue to review non-mandatory detention cases pursuant to existing guidelines.

At the time of custody referral, Field Office Directors must ensure that all cases have been properly processed and that all requisite forms have been completed by CBP Border Patrol Agents and

Subject:  Expedited Removal Guidance
Page 3

included in the alien file (A-file).  Pursuant to the July 20, 2004 Memorandum from Undersecretary
for Border and Transportation Security relating to Costs Associated with the Care and Custody of
Aliens, DRO will take physical custody of the alien after CBP has completed all of the required
paperwork.

To the extent possible, CBP Border Patrol Agents will update the Deportable Alien Control System
(DACS) and the Central Index System (CIS) prior to an alien being transferred to DRO custody.
However, the final responsibility for this critical task lies with the Field Officer Directors.  Please
ensure the proper updating of DACS in a timely manner.

PAROLE POLICY

Aliens placed in ER will be detained under INA § 235, not INA § 236.  Any release of these aliens
will be considered under parole authority of INA § 212(d)(5). Unless an alien is found to have a
credible fear, parole is authorized only on a case-by-case basis if required to meet a medical
emergency or a legitimate law enforcement objective. See 8 CFR 235.3(b)(2)(iii) and 8 CFR
235.3(b)(4)(ii).

If an alien is found to have a credible fear and referred for section 240 removal proceedings,
detention authority will continue to be under INA § 235, and DRO policy is that parole should be
granted under 8 CFR § 212.5(b) only in exceptional cases of medical emergency or where
continued detention would cause unusual hardship. Juveniles are a special class and must continue to
be treated in accordance with the Flores v. Reno settlement and other special laws applicable to
juveniles.

Once credible fear is found, each case must be individually reviewed under these custody criteria,
and each file must be documented that the review took place.  If the alien or the alien's counsel has
independently submitted a parole request, the review should take into account any information
submitted as part of the request.

If an alien is transferred to another field office pending conclusion, the receiving Field Office
Director shall make custody and parole determinations in accordance with the above policy. As per
the above, custody will be maintained absent any new medical emergency, law enforcement
objective, or circumstance of unusual hardship if credible fear has been found.

If an IJ grants asylum or withholding of removal, Field Office Directors will apply existing policy in
determining whether the alien will be continued in detention or released on parole.

WEEKLY/MONTHLY REPORTS

Field Office Directors will be responsible for the development of weekly and, later, monthly ER
tracking reports.  The Phoenix and San Antonio Field Offices will be directly impacted by the initial
expansion of authority and will bear the greatest reporting burden.  However, all field offices

Subject: Expedited Removal Guidance
Page 4

receiving ER cases from this expanded authority will adhere to reporting requirements. Reports will contain the information listed below:

1. The number of aliens (broken down by nationality and numbers) who:

   · did not request credible fear interviews and are awaiting removal;

   · are awaiting credible fear interviews;

   · have received credible fear interviews and continue in detention awaiting proceedings; and

   · have received credible fear interviews and have been paroled based on exceptional circumstances.

2. The average length of stay for aliens (broken down by nationality and numbers) in ER. Include those having credible fear, and who are placed in regular proceedings. Include how much of the detention time is due solely to travel document requests and break down this group by nationality and numbers.

3. The number of aliens (broken down by nationality and numbers) granted relief, to include asylum and withholding of removal.

Headquarters DRO will develop a metric to measure if the number of removals is increasing due to ER.

COMMUNICATION AND FLEXIBILITY

It cannot be emphasized enough that the success of this initiative is dependent upon communication and flexibility on the part of all DRO, CBP and CIS components. Accurate and timely data collection and reporting will permit DHS to continuously evaluate the effect of this pilot. Please keep Headquarters DRO informed of any issues and of the progress related to expanded ER.

Attachments

"EXHIBIT      L"

# DECLARATION

My name is Albert Cruz and I am a Deportation Officer with the Immigration and Customs Enforcement (ICE), United States Department of Homeland Security (DHS), in San Antonio, Texas. I have held this position since 2001. As a Deportation Officer I am responsible for the detention and removal of aliens. My duties include making travel arrangements for an alien's removal from the United States. I am familiar with the ICE file relating to Fatima A. Abreu-Gomez (A98 716 947). Ms. Abreu-Gomez is a native of Cuba and a Citizen of Spain. She was ordered removed from the United States. DHS has obtained a travel document from Spain valid until August 1, 2005 for her removal to that country. Travel arrangements have now been made for her removal on July 28, 2005.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 19, 2005.

Albert Cruz
Deportation Officer
San Antonio, Texas

05 1508

FILED

JUL 2 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

"EXHIBIT     M"

IN THE UNITED STATES DISTRICT COURT **05-60686**

FOR THE WESTERN DISTRICT OF TEXAS **FILED**

**WACO DIVISION**

JUL 1 8 2005

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
                    DEPUTY CLERK

| | | |
|---|---|---|
| FATIMA A. ABREU-GOMEZ, (Alien # 98 716 947), Petitioner, | § § § § | |
| v. | § § | CIVIL ACTION NO. W-05-CA-223 |
| AARON L. CABRERA, Officer in Charge, et la., Respondents. | § § § | |

### O R D E R

Petitioner seeks an emergency petition for writ of habeas corpus and an emergency motion for preliminary injunction to halt her deportation from the United States. Petitioner, a native of Cuba and a naturalized citizen of Spain, attempted to enter the United States at Brownsville, Texas from Mexico on April 25, 2005. She did not have proper documentation to permit her entry into the United States and was referred for an expedited removal proceeding. Petitioner expressed a fear of persecution upon being returned to Cuba and was referred to an asylum officer for a credible fear of persecution interview. The asylum officer determined the Petitioner did not have a credible fear of persecution and referred his findings to an Immigration Judge. After a hearing before the Immigration Judge, the asylum officer's determination was sustained as Petitioner would be returned to Spain and did not establish a significant possibility that she would be persecuted or tortured there.

**05 1508**

**FILED**

JUL 2 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

07/18/05  MON 16:09

Having reviewed the briefs of the parties and the applicable law, the Court is persuaded that this case must be referred to the Fifth Circuit Court of Appeals under Section 106 of the REAL ID Act. Under Section 106, a petition for review to the appropriate court of appeals is the exclusive means of review of an administrative order of removal, deportation, or exclusion. Accordingly, it is

**ORDERED** that this case is **TRANSFERRED** to the Fifth Circuit Court of Appeals.

**SIGNED** this ___18___ day of July, 2005.

WALTER S. SMITH, JR.
**Chief United States District Judge**

2

"EXHIBIT      N"

**U.S. Department of Justice**

Civil Division

LSW:SG:alg
CD-NEW



Washington, DC 20530

July 19, 2005

**By Facsimile and Regular Mail**
Cindy Broadhead, Deputy Clerk
United States Court of Appeals
  for the Fifth Circuit
600 Camp Street
New Orleans, LA 70130

                Re: Fatima A. Abreu-Gomez v. Gonzales
                    Docket No. 05-60686 (A98 716 947)

Dear Ms. Broadhead:

     This letter responds to the Court's inquiry concerning the
deportation status of Ms. Abreu-Gomez. Deportation Officer Al
Cruz of the San Antonio Office, Department of Homeland Security,
has been notified of the petition for review and motion for stay
of removal in this case. Deportation Officer Al Cruz advises
that Ms. Abreu-Gomez is currently in custody and will not be
removed prior to July 28, 2005.

                    Respectfully submitted,

                    *Angela L. Green*

                    ANGELA L. GREEN
                    Paralegal Specialist
                    U.S. Department of Justice
                    OIL/Civil Division
                    P.O. Box 878, Ben Franklin Station
                    Washington, D.C.   20530
                    (202) 305-4340

**FILED**

**JUL 2 9 2005**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

cc: Claudia M. Ima, Esquire
    Law Offices of Eduardo Soto, P.A.
    999 Ponce de Leon Blvd., Suite 940
    Coral Gables, FL 33134

    Deportation Officer Al Cruz
        (via fax@210-967-7096)

05 1508

# "EXHIBIT    O"

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
FILED

JUL 2 6 2005

CHARLES R. FULBRUGE III
CLERK

No. 05-60686

FATIMA A ABREU-GOMEZ

Petitioner

v.

ALBERTO R GONZALES, U S ATTORNEY GENERAL

Respondent

---------------------
Petition for Review of an Order of the
Board of Immigration Appeals
---------------------

Before SMITH, GARZA, and PRADO, Circuit Judges.

PER CURIAM:

IT IS ORDERED that the petitioner's motion for a preliminary injunction to stay the removal of the petitioner pending review is DENIED.

IT IS FURTHER ORDERED that the respondent's motion to dismiss the petition for review for lack of jurisdiction is GRANTED.

IT IS FURTHER ORDERED that the respondent's alternative motion to extend the time to file the administrative record until 60 days from the Court's denial of the motion to dismiss is DENIED as unnecessary.


E.M.G.


E.C.P.

05 1508

FILED

JUL 2 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

"EXHIBIT     P"

Department of Homeland Security
U.S. Citizenship and Immigration Services

# Record of Determination/Credible Fear Worksheet

| HLG | ZHN | A98 716 947 | ABREU GOMEZ |
|---|---|---|---|
| District Office Code | Asylum Office Code | Alien's File Number | Alien's Last/ Family Name |
| Lubbad | Ali | Cuban / SPANISH | |
| Asylum Officer's Last Name | Asylum Officer's First Name | Alien's Nationality | |

## *All statements in italics must be read to the applicant*

**SECTION I:**                                    **INTERVIEW PREPARATION**

1.1  4/25/05                              1.2  Brownsville, TX
     Date of arrival [MM/DD/YY]                Port of arrival

1.3  4/25/05                              1.4  P.I.S.P.C., BUENA VISTA RD., RT. 3, BOX 341, LOS
                                               FRESNOS, TX 78566
     Date of detention [MM/DD/YY]              Place of detention

1.5  4/25/05                              1.6  _____
     Date of AO orientation [MM/DD/YY]         If orientation more than one week from date of detention, explain delay

1.7  4/29/05 / 5/02/05          1.8  P.I.S.P.C., BUENA VISTA RD., RT. 3, BOX 341, LOS FRESNOS, TX 78566
     Date of interview [MM/YY/DD]              Interview site

1.9  ☒  Applicant received and signed Form M-444 and relevant pro bono list on     4/25/05
                                                                            Date signed [MM/DD/YY]

1.10  Does applicant have consultant(s)?        ☐ Yes   ☒ No

     1.11  If yes, consultant(s) name, address, telephone number and relationship to applicant _____

1.12  Persons present at the interview (check which apply)

     1.13  ☐  Consultant(s)
     1.14  ☐  Other(s), list: _____
     1.15  ☒  No one other than applicant and asylum officer

1.16  Language used by applicant in interview: _____Spanish_____

1.17  LSA  200268                         ☒ Yes   ☐ No    10 59        11-11
     Interpreter Service, Interpreter ID Number.   Interpreter Has Forms   Time Started   Time Ended

1.18      200268                         ☒ Yes   ☐ No    1140         1202
     Interpreter Service, Interpreter ID Number.   Interpreter Has Forms   Time Started   Time Ended

1.19      200268                         ☒ Yes   ☐ No    10:15 Am     11:51
     Interpreter Service, Interpreter ID Number.   Interpreter Has Forms   Time Started   Time Ended

1.20  ☐  Interpreter was not changed during the interview

1.21  ☐  Interpreter was changed during the interview for the following reason(s):

     1.22  ☐  Applicant requested a female interpreter replace a male interpreter, or vice versa
     1.23  ☐  Applicant found interpreter was not competent        1.24  ☐  Applicant found interpreter was not neutral
     1.25  ☐  Officer found interpreter was not competent          1.26  ☐  Officer found interpreter was not neutral
     1.27  ☐  Bad telephone connection

05 1508

1.28  ☒  Asylum officer read the following paragraph to the applicant at the beginning of the interview:

*The purpose of this interview is to determine whether you may be eligible for asylum or protection from removal to a country where you fear persecution or torture. I am going to ask you questions about why you fear returning to your country or any other country you may be removed to. It is very important that you tell me the truth during the interview and that you respond to all of my questions. This may be your only opportunity to give such information. Please feel comfortable telling me why you fear harm. U.S. law has strict rules to prevent the disclosure of what you tell me today about the reasons why you fear harm. The information you tell me about the reasons for your fear will not be disclosed to your government, except in exceptional circumstances. The statements you make today may be used in deciding your claim and in any future immigration proceedings. It is important that we understand each other. If at any time I make a statement you do not understand, please stop me and tell me you do not understand either I am explain it to you. If at any time you tell me something I do not understand, I will ask you to explain.*

FILED

JUL 2 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Form I-870 (Rev. 11/21/03) N Page 1

## SECTION II:                    BIOGRAPHIC INFORMATION

2.1   <u>ABREU GOMEZ</u>

Last Name/ Family Name [ALL CAPS]

2.2   <u>FATIMA ~~ALIET~~</u>            2.3   <u>Aliet</u>

First Name                                  Middle Name

2.4   <u>10/9/1971</u>                  2.5   Gender   ☐ Male   ☑ Female

Date of birth [MM/DD/YY]

2.6   <u>none</u>

Other names and dates of birth used

2.7   <u>Cuba</u>                      2.8   <u>Cuba</u> y <u>Spain</u>

Country of birth                            Country (countries) of citizenship (list all)

2.9   ~~Cuba~~ <u>SPAIN, Barcelona</u>

Address prior to coming to the U.S. (List Address, City/Town, Province, State, Department and Country).

2.10  <u>Hispanic</u>           2.11  <u>Catholic/Christian/Other (NONE)</u>  <u>Spanish</u>

Applicant's race or ethnicity       Applicant's religion          All languages spoken by applicant

2.13  Marital status:   ☐ Single   ☐ Married   ☐ Legally separated   ☒ Divorced   ☐ Widowed

  2.14   Did spouse arrive with applicant?   ☐ Yes   ☐ No

  2.15   Is spouse included in applicant's claim?   ☐ Yes   ☐ No

  2.16   If currently married (including common law marriage) list spouse's name, citizenship, and present location (**if with applicant, provide A-Number**):

2.17  Children:   ☐ Yes   ☒ No

2.18  List any children (*Use the continuation section to list any additional children*):

| Date of birth (MM/DD/YY) | Name | Citizenship | Present location (if w/PA, list A-Numbers) | Did child arrive with PA? | | Is child included in PA's claim? | |
|---|---|---|---|---|---|---|---|
| | | | | ☐ Yes | ☐ No | ☐ Yes | ☐ No |
| | | | | ☐ Yes | ☐ No | ☐ Yes | ☐ No |
| | | | | ☐ Yes | ☐ No | ☐ Yes | ☐ No |
| | | | | ☐ Yes | ☐ No | ☐ Yes | ☐ No |
| | | | | ☐ Yes | ☐ No | ☐ Yes | ☐ No |
| | | | | ☐ Yes | ☐ No | ☐ Yes | ☐ No |

Form I-870 (Rev. 11/21/03) N Page 2

2.19   Does applicant claim to have a medical condition (physical or mental), or has the officer observed any indication(s) that a medical condition exists? If YES, answer questions 2.20 and 2.21 and explain below.    ☐ Yes   ☒ No

    .2.20    Has applicant notified the facility of medical condition?    ☐ Yes   ☐ No

    2.21    Does applicant claim that the medical condition relates to torture?    ☐ Yes   ☐ No

2.22    Does the applicant have a relative, sponsor or other community ties, including spouse or child already listed above?    ☒ Yes   ☐ No

    2.23    If YES, provide information on relative or sponsor (use continuation section, if necessary):

_Maricela Vista Leal_      _Cousin_
Name          Relationship

_8860 SW 43rd St. Miami FL 33165_      _305 552 9196_
Address          Telephone Number

☐ Citizen    ☒ Legal Permanent Resident    ☐ Other

## SECTION III:    CREDIBLE FEAR INTERVIEW

**The following notes are not a verbatim transcript of this interview.**
**These notes are recorded to assist the individual officer in making a credible fear determination**
**and the supervisory asylum officer in reviewing the determination.**
**There may be areas of the individual's claim that were not explored or documented for purposes of this threshold screening.**

The asylum officer must elicit sufficient information related to both credible fear of persecution and credible fear of torture to determine whether the applicant meets the threshold screening. Even if the asylum officer determines in the course of the interview that the applicant has a credible fear of persecution, the asylum officer must still elicit any additional information relevant to a fear of torture. Asylum officers are to ask the following questions and may use the continuation sheet if additional space is required. If the applicant replies YES to any question, the asylum officer must ask follow-up questions to elicit sufficient details about the claim in order to make a credible fear determination.

3.1   a.  *Have you or any member of your family ever been mistreated or threatened by anyone in any country to which you may be returned?*

☒ Yes   ☐ No   _Cuba — NO / SPAiN — Yes_
_(See Attached Q & A)_

_Spain - Felt discriminated in Spain - see extra notes_

  b.  *Do you have any reason to fear harm from anyone in any country to which you may be returned?*

☒ Yes   ☐ No   _Cuba? Jail Why? because I left Cuba - they call it being a traitor_

_Spain - discriminated against because I am a foreigner_

  c.  If YES to questions *a* and/or *b*, was it or is it because of any of the following reasons? (Check each of the following boxes that apply).

☐ Race   ☐ Religion   ☒ Nationality   ☐ Membership in a particular social group   ☒ Political Opinion

_CubA = Political OPiNiON._
_SPAiN = CubAN NATioNAliTy._

98 716 947

☒  At the conclusion of the interview, the asylum officer must read the following to applicant:

3.2

If the Department of Homeland Security determines you have a credible fear of persecution or torture, your case will be referred to an immigration court, where you will be allowed to seek asylum or withholding of removal based on fear of persecution or withholding of removal under the Convention Against Torture. The Field Office Director in charge of this detention facility will also consider whether you may be released from detention while you are preparing for your hearing. *If the asylum officer determines that you do not have a credible fear of persecution or torture, you may ask an Immigration Judge to review the decision. If you are found not to have a credible fear of persecution or torture and you do not request review, you may be removed from the United States as soon as travel arrangements can be made. Do you have any questions?*

3.3  ☒  At the conclusion of the interview, the asylum officer must read a summary of the claim, consisting of the responses to Questions 3.1 a-c and information recorded in the Additional Information/Continuation section, to applicant.

****Typed Question and Answer (Q&A) interview notes and a summary and analysis of the claim must be attached to this form for all negative credible fear decisions. These Q&A notes must reflect that the applicant was asked to explain any inconsistencies or lack of detail on material issues and that the applicant was given every opportunity to establish a credible fear.

## SECTION IV:                                      CREDIBLE FEAR FINDINGS

### A.    Credible Fear Determination:

Credibility

4.1  ☒   There is a significant possibility that the assertions underlying the applicant's claim could be found credible in a full asylum or withholding of removal hearing.

4.2  ☐   Applicant found **not** credible because (check boxes 4.3-4.5, which apply):

4.3  ☐      Testimony was internally inconsistent on material issues.

4.4  ☐      Testimony lacked sufficient detail on material issues.

4.5  ☐      Testimony was not consistent with country conditions on material issues.

Nexus

4.6  ☐   Race    4.7  ☐   Religion    4.8  ☒   Nationality    4.9  ☐   Membership in a Particular Social Group

(Define the social group): _____

4.10  ☒   Political Opinion    4.11  ☐   Coercive Family Planning [CFP]    4.12  ☐   No Nexus

Credible Fear Finding

4.13  ☐   Credible fear of **persecution** established.

OR

4.14  ☐   Credible fear of **torture** established.

OR

4.15  ☒   Credible fear of persecution NOT established and there is not a significant possibility that the applicant could establish eligibility for withholding of removal or deferral of removal under the Convention against Torture.

### B.    Possible Bars:

4.16  ☒   Applicant could be subject to a bar(s) to asylum or withholding of removal (check the box(es) that applies and explain on the continuation sheet):

4.17  ☐   Particularly Serious Crime    4.18  ☐   Security Risk    4.19  ☐   Aggravated Felon

4.20  ☐   Persecutor    4.21  ☐   Terrorist    4.22  ☒   Firmly Resettled

4.23  ☐   Serious Non-Political Crime Outside the United States

4.24  ☐   Applicant does **not** appear to be subject to a bar(s) to asylum or withholding of removal.

Alien's File Number: 98 716 947

**C.    Identity:**

4.25    ☒ Applicant's identity was determined with a reasonable degree of certainty (check the box(es) that applies):

4.26    ☒ Applicant's own credible statements. (If testimony is credible overall, this will suffice to establish the applicant's identity with a reasonable degree of certainty).

4.27    ☐ Passport which appears to be authentic.

4.28    ☐ Other evidence presented by applicant or in applicant's file (List): _____

_____

4.29    ☐ Applicant's identity was **not** determined with a reasonable degree of certainty.  (Explain on the continuation sheet.)

**SECTION V:        ASYLUM OFFICER / SUPERVISOR NAMES AND SIGNATURES**

5.1    Ali Lubbad /ZHN043
Asylum officer name and ID CODE (print)

5.2    _[signature]_
Asylum officer's signature

5.3    5/02/05
Decision date

5.4    Richard Rhodie/Lee Telfer
Supervisory asylum officer name

5.5    _[signature]_
Supervisor's signature

5.6    8/02/05
Date supervisor approved decision

**ADDITIONAL INFORMATION/CONTINUATION**

| | |
|---|---|
| Are you a citizen or permanent resident of any other countries? | Spain – Naturalized citizen |
| Are you a member of any political parties? | N/ |
| Do you support the Castro regime? | N/ |
| Have you ever been arrested? | N/ |
| Did the applicant  answer general questions about Cuba? | (Yes) No |
| Applicant testified that she does not agree with the Castro regime and believes that she will be imprisoned for leaving  Cuba. | |

Name: FÁTIMA ALIET ABREU GOMEZ
A#: 98 716 947

# Extra Notes:

Where is Granma located? East

What is the Cuban National Anthem? OK

6

A# 98 716 947
Fatima A. Abreu Gomez
Cuba/Spain

Q: What is your complete name?
A: Fatima Aliet Abreu Gomez.

Q: What is you birth date?
A: October 09, 1971

Q: Are you being treated well in custody?
A: Yes.

Q: Do you have any medical problems/concerns?
A: No.

Q: Are you represented by an attorney today?
A: No.

Q: Are you married?
A: No.

Q: Do you have any children?
A: No

Q: Do you have any religious affiliation?
A: No.

Q: What race/ethnicity do you consider yourself?
A: White.

Q: What languages do you speak?
A: Spanish only.

Q: Are you willing to perform this interview today without legal representation?
A: Yes.

Q: What do you think will happen to you if you are returned to Cuba?
A: I will go to prison and not be allowed to work or have anything there: I will be
detained, followed, and harassed by them?

Q: Who is them?
A: Cuban government.

7

A# 98 716 947
Fatima A. Abreu Gomez
Cuba/Spain

05/02/2005
Start:10:15AM
End: 11:51AM

Q: Why would the Cuban government want to do these things to you?
A: Because I am not in agreement with Castro and that's why I left Cuba and anyone who leaves Cuba is viewed as a traitor and that is why government would do these things to me, and because I came to the US and asked for asylum so I would definitely be viewed as a traitor?

Q: When did you leave Cuba?
A: December 1998.

Q: Did you ever have problems in Cuba before you left in December 1998?
A: Yes, I was a judge in the municipality of Playa and I gave out rulings that weren't in accordance with the Castro regime.

Q: Can you explain this a little more?
A: I at times, had cases that involved people accused of treason, and I would dismiss these cases on technicalities.

Q: Did anything happen to you as a result of your rulings?
A: Yes, the president of the court Mr. Ousmane heavily questioned me, and he told me that my decision was contrary to all other courts. At this point I was marked and this means that I had all of my judicial decisions reviewed by supervisors and I was harassed constantly.

Q: What made you decided to leave Cuba?
A: I was marked as a counterrevolutionary and pressured constantly.

Q: How did you realize this?
A: I was told directly by superiors that I was a counterrevolutionary and constantly pressured.

Q: Did they ever tell you consequences of being a counterrevolutionary?
A: No, they just constantly gave me psychological pressure and prevented all employment opportunities.

Q: How did they prevent employment opportunities?
A: They would give me bad references and identify me as a counterrevolutionary; I couldn't even work as a lawyer anymore?

Q: How did you get to Spain?
A: I got a tourist visa and went in December 1998.

Q: When did you become Spanish citizen?
A: 5 or six months ago.

Q: What do you think will happen to you if you are returned to Spain?

A# 98 716 947
Fatima A. Abreu Gomez
Cuba/Spain

A: I don't know exact consequences?

Q: Are you afraid to return to Spain?
A: Yes.

Q: Why are you afraid to return to Spain?
A: I was there six years and felt poorly there.

Q: Why did you feel poorly in Spain?
A: Because the people in Spain treated me poorly.

Q: What people?
A: Spanish people.

Q: Anyone in particular treat you badly?
A: No, in general.

Q: What kind of treatment are you referring to exactly?
A: I felt fear.

Q: Why did you feel fear?
A: Because of acts, for instance: I would call to rent an apartment and would be told it is already rented, then I would have a Spanish friend call back and he would be told that he could come over and take a look, right after I called! Also, I was told when trying to rent places that they didn't want foreigners.

Q: Did these people say anything else to you?
A: No.

Q: Any estimate of how often this happened?
A: Maybe ten times, in the end I couldn't rent anything in my name, I would take a room sublet a room with several others.

Q: Did you experience any other problems in Spain?
A: Yes, plenty of things, I had a motorcycle a small one and when I parked it in the neighborhood I got a note that said "you South American piece of shit, if you park your motorcycle on the sidewalk again we'll burn it".

Q: Where in Spain did you live?
A: Barcelona.

Q: Did you ever go to the Spanish authorities with your problems?
A: No.

Q: Why not?

9

A# 98 716 947

05/02/2005
Start:10:15AM
Fatima A. Abreu Gomez
End: 11:51AM
Cuba/Spain

A: Because I couldn't prove anything? I called an organization called SOS racism; they
said if I didn't know whom the person was they couldn't do anything, which I
understand, I know it's difficult to believe that this happens to people in a democratic
country?

Q: Any other problems in Spain?
A: I was told by a private insurance company (Alliance) that as a foreigner I would have
to pay my insurance premium in full. Most Spanish pay monthly but I was told I would
have to pay in full.

Q: Did this problem occur before or after you became a Spanish Citizen?
A: Before or after it would be the same?

Q: Did it occur before or after?
A: After I became a Spanish citizen, to them I am just a foreigner; it has to do with my
accent.

Q: Do you think all foreigners are treated this way or just Cubans?
A: I think all Latinos are treated this way and Arabs too?

Q: Did you have any other problems because of your accent?
A: Yes, I don't want to go back there, these were daily occurrences, I was told on one
occasion when I was applying for a job that the job was only for Spaniards or members of
the European Community.

Q: Did you ever seek help of government of Spain in regard to this matter?
A: No, I don't know, I don't think about it, I guess because I didn't come from a
democratic country?

Q: Why did you decide to become a Spanish citizen?
A: I guess just to be able to get a passport to leave the country
  And come to the US.

Q: Did you ever attempt to get any help from Spanish anti-discriminatory groups or other
immigrant resettlement groups in Spain?
A: No, just that time I told them about the note I got on my motorcycle, there's not a lot
they can do either?

Q: Do you ever have any problems with Spanish government?
A: No.

Q: Ever have any problems with the Spanish police?
A: No.

Q: How did you support yourself in Spain?
A: Worked in Restaurants, furniture stores, grocery markets?

10

A# 98 716 947
'Fatima A. Abreu Gomez
Cuba/Spain

05/02/2005
Start:10:15AM
End: 11:51AM

Q: Why didn't you continue in legal field?
A: I didn't even try because I didn't want to renew license every eight months and because I wasn't intending to stay there.

Q: What made you decide to come to the USA?
A: My family is here in Miami, FL.

Q: When did family come to US?
   A. Approximately 10 years ago?

Q: Why did you stay living in Spain for six years?
A: Because I didn't have an opportunity?

Q: When did you become a Spanish Legal Permanent Resident?
A: Maybe about one year ago?

Q: So it took one year to become a citizen?
A: Yes.

Q: How did you become a Citizen of Spain?
A: First, I worked as a maid in home and got residency for one year, then I renewed residency for three years, then I fulfilled a legal residency requirement and was offered citizenship in Spain.

Q: Did you ever apply for asylum in Spain?
A: No, they don't give asylum there to Cubans?

Q: When did you leave Spain?
A: April 2005, I went to Mexico then I came to USA?

Q: So am I correct in stating that you are afraid of returning to Spain because you fear being discriminated against by the Spanish population generally on account of your Cuban origin/nationality?
A: Yes, exactly.

Q: Do you think the people in Spain treated you poorly for any other reason(s)?
A: No, just because I am from Cuba and a foreigner.

Q: anything else concerning this fear of return to Spain that I missed?
A: I don't feel Spanish; it was just a bridge to come to USA, like many Cubans do?

Q: Do you fear being physically harmed in Spain?
   A. No, I don't think so?

A# 98 716 947
Fatima A. Abreu Gomez
Cuba/Spain

05/02/2005
Start:10:15AM
End: 11:51AM

Q: Do you think anyone in Spain would want to physically hurt, mistreat, or torture you if you had to go back there?
A: No, I just don't feel like I belong there in Spain?

Q: Any other reason/reasons you are afraid to return to Spain?
A: No.

Q: Am I correct in stating that you fear being imprisoned in Cuba because of your decision to oppose Cuban government policies in regard to your adjudications a judge, as well as your decision to leave Cuba for an extended period of time and request Asylum in the USA?
    A. Yes.

Q: Any other reasons you are afraid to return to Cuba?
A: No.

Q: Ever been affiliated with, supported, or assisted a group that has been accused of using violence to realize its goals?
A: No

Q: Ever arrested?
A: Never.

Q: Ever harmed another person?
A: No, never.

Q: Is there anything else today that you would like to tell me that you feel is important we talk about?
A: No.

Q: Are you a citizen or LPR of a country other than Spain?
A: No.

12