UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FATIMA A. ABREU-GOMEZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No.: 1:05CV01508 |
| v. ) | Judge: Honorable Emmet G. Sullivan |
| ) | |
| HON. MICHAEL CHERTOFF, *et al.*, ) | |
| ) | |
| Respondents. ) | |

### PETITIONER'S OPPOSITION TO RESPONDENTS' MOTION TO DISMISS

Petitioner, Fatima A. Abreu-Gomez (hereafter "Petitioner" or "Ms. Abreu-Gomez") respectfully submits this Opposition to Respondents' Motion to Dismiss her Amended Petition for a Writ of Habeas Corpus. For the reasons set forth more fully below, Ms. Abreu-Gomez requests that the Court exercise jurisdiction over her Petition, deny the Motion to Dismiss, and order Respondents to place her in full removal proceedings under § 240 of the Immigration and Nationality Act ("INA"). By doing so, Ms. Abreu-Gomez will receive the full evidentiary hearing on her asylum claim to which she is entitled under the law.

### INTRODUCTION

The issue before the Court in the pending motion is a pure question of law: Whether this Court has jurisdiction to review an administrative order under § 235 of the INA directing Petitioner's removal from the United States? Under applicable law, the answer is yes.

As set forth in Petitioner's Amended Petition for a Writ of Habeas Corpus (hereinafter "Amended Petition"), Ms. Abreu-Gomez is a native and citizen of Cuba and also a citizen of

1

Spain. She presented herself at the land border of the United States located at Brownsville, Texas on April 25, 2005, and stated her desire to seek asylum in the United States.[1]

The subsequent course of events relating to the processing of Petitioner's request for asylum is undisputed. With full knowledge that Ms. Abreu-Gomez is a Cuban citizen, Respondents nevertheless placed her in expedited removal proceedings under § 235 of the INA because she did not have a visa to enter the United States. *See* Exhibit A to Motion to Dismiss, Record of Deportable/Inadmissible Alien dated 4/25/05 (stating that "subject freely admitted to being a citizen of Cuba who was seeking political asylum."). That act is at the core of this dispute. Petitioner contends that her placement in expedited removal proceedings was done in clear contravention of a written directive issued by the Acting Director of the Department of Homeland Security ("DHS") Office of Detention and Removal Operations mandating that "ER [expedited removal] will not be applied to unaccompanied juveniles, citizens and nationals of Cuba and El Salvador, and aliens who are members [of the *American Baptist Churches* Class Action Settlement]."

After Respondents initiated expedited removal proceedings, standard procedures dictated that an Asylum Officer conduct a Credible Fear Interview. The Asylum Officer ultimately determined that Ms. Abreu-Gomez did not have a credible fear of persecution or torture in Spain. Consequently, Respondents issued a § 235 expedited removal order.

---

[1] Ms. Abreu-Gomez's asylum claim arises first from her former status as a judge in Cuba, where she displeased the Castro regime by imposing sentences that were perceived as too lenient in a number of cases involving young men being prosecuted for publicly expressing anti-Castro sentiments. When the political pressure against her became too intense, Ms. Abreu-Gomez left Cuba for Spain, where she resided for six years but faced discrimination due to her status as a Cuban in Spain. In addition to the discrimination, a group of influential pro-Castro activists in Spain contacted her in Spain, threatened her, and threatened her family members still living in Cuba. Facing threats and persecution in Spain, Ms. Abreu-Gomez sought refuge in the United States. At a full evidentiary hearing on her asylum claim -- which she has been denied to date -- Ms. Abreu-Gomez would testify and present corroborating evidence about her fear of persecution in Spain as well as in Cuba.

Ms. Abreu-Gomez pursued the only administrative review available to a person subject to an expedited removal order: she sought review of the "Credible Fear" determination from an Immigration Judge. At the conclusion of that limited review, which did not include an evidentiary hearing of the type afforded under INA § 240, the Immigration Judge upheld the Asylum Officer's Credible Fear determination and the expedited removal Order. That ruling concluded the agency review of her claim for asylum.

Ms. Abreu-Gomez continued her quest to obtain asylum in the United States. She obtained counsel and filed an Emergency Petition for Writ of Habeas Corpus and Emergency Petition for Preliminary Injunction in the U.S. District Court for the Western District of Texas. There, she argued that she never should have been placed in expedited removal proceedings at all because applicable DHS regulations and policies preclude the use of the expedited removal process against Cubans. Specifically, she relied on an August 11, 2004 regulation, issued by then-DHS Secretary Ridge, which expanded the existing use of § 235 proceedings in parts of the Southwest and made clear that *expedited removal proceedings would not be initiated against Cuban citizens or nationals.* 69 Fed. Reg. 48877.[2]

Before her Petition received substantive review, the case was transferred to the United States Court of Appeals for the Fifth Circuit. The district court mistakenly ruled that transfer was required pursuant to the REAL ID Act, which had become law on May 11, 2005.[3] The Fifth

---

[2]    *See* fuller discussion at 13-14, *infra.*

[3]    The REAL ID Act did mandate transfer to the courts of appeals of all pending habeas corpus petitions seeking review of final removal orders that had been entered pursuant to § 240 of the INA. (*See* Pub. Law 109-13, 119 Stat. 231.) However, jurisdiction over habeas petitions seeking review of § 235 expedited removal orders was not affected. *See* §106 of REAL ID.

3

Circuit dismissed the habeas petition for lack of jurisdiction but did not provide the reasoning underlying its decision.

Petitioner did not give up on her asylum claim. She filed pro sé Emergency Petitions for a Writ of Habeas Corpus and for a Preliminary Injunction in this Court, still seeking review of her expedited removal order. She challenged the order on the same grounds as in the Texas case, but, in addition to the August 2004 regulation, she also relied on the directive issued by Immigration and Customs Enforcement's ("ICE") Acting Director of Detention and Removal, Victor X. Cerda, on September 14, 2004, reiterating that *expedited removal would not be applied to, among other persons, citizens and nationals of Cuba*. On August 25, 2005, after the appointment of undersigned counsel, she filed her Amended Petition.

In response, Respondents make the extraordinary assertion that "this Court and any other United States District Court lacks [sic] jurisdiction over the petitioner's specific claims." *See* Motion to Dismiss at 6. Ms. Abreu-Gomez has not had any substantive judicial review of her habeas challenge to her expedited removal order. Even Respondents concede, as they must, that Petitioner is entitled to some district court review via habeas proceedings. *See* Motion to Dismiss at 4, 7. As demonstrated below, this Court has jurisdiction to conduct the necessary review.

## ARGUMENT

This Court must uphold Ms. Abreu-Gomez's statutory right, pursuant to INA § 242(e)(2), as well as her constitutional right to Due Process under the Fifth and Fourteenth Amendments, to review of her expedited removal order. She does not ask this Court to review the merits of her plea for asylum. All that she seeks is the opportunity to be heard in the full § 240 removal

proceedings that she is entitled to pursuant to statute, treaty obligations governing asylum claims, and the Constitution of the United States.

## I.   THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THE AMENDED PETITION.

Respondents concede that § 235 expedited removal orders are reviewable by U.S. district courts in habeas proceedings. Motion to Dismiss at 6-7. They also acknowledge that Petitioner filed a habeas petition seeking such review, but that it was transferred by the Western District of Texas to the Fifth Circuit and subsequently dismissed. *Id*. at 2-3.

Nevertheless, Respondents now aver that "[t]his Court and any other United States District Court lacks [sic] subject matter jurisdiction over the petitioner's specific claims." *Id.* at 6. Thus, Respondents argue that Petitioner's right to review simply evaporated and that no court in the United States is capable of remedying the statutory and constitutional violation that occurred when the government failed to comply with its own regulations and procedures governing the applicability (or lack thereof) of expedited removal proceedings to Cubans.[4] If no court can review Respondents' action in placing Ms. Abreu-Gomez in expedited removal proceedings, notwithstanding the fact that DHS's own rules clearly prohibit such placement, then similarly no court could review any other DHS determination to place someone in expedited removal proceedings contrary to the applicable statute and regulations. For example, under Respondents' reasoning, no court could review a DHS decision to use expedited removal proceedings against Cubans who arrived by air, against unaccompanied juveniles, against ABC class members, or against persons physically present in the United States for several years -- all other groups of persons indisputably not currently subject to expedited removal proceedings.

---

[4]   The applicable regulation and Directive are discussed more fully at 13-17, *infra*.

5

Surely, Congress did not intend in INA § 242(e)(2) to give DHS *carte blanche* authority to violate § 235 or people's constitutional rights with no accountability through judicial review.

The writ of habeas corpus represents "the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." *Harris v. Nelson*, 394 U.S. 286, 290-91 (1969). It is of such crucial importance to the preservation of liberty in the United States that it receives specific constitutional protection. *See* U.S. Const., Art. 1, § 9, cl. 2. The Supreme Court emphasized the significance of the writ of habeas corpus by holding that

> The scope and flexibility of the writ – its capacity to reach all manner of illegal detention – its ability to cut through barriers of form and procedural mazes – have always been emphasized and jealously guarded by courts and lawmakers. The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.

*Harris*, 394 U.S. at 291.

The Supreme Court recently affirmed the critical role of habeas corpus review in the immigration context.

> At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of executive detention.

*INS v. St. Cyr*, 533 U.S. 289, 121 S. Ct. 2271, 2280 (2001). Ms. Abreu-Gomez implores this Court to apply the "initiative and flexibility" deemed "essential" by the Supreme Court in *Harris*.

As Respondents note in their Motion to Dismiss, the INA limits the scope of the inquiry district courts may make in reviewing expedited removal orders. Motion to Dismiss at 6-7. The three issues to be considered are:

(1)  whether the petitioner is an alien;

(2)  whether the petitioner was ordered removed under [the expedited removal provisions]; and

6

>    (3)     whether the petitioner can prove by a preponderance of the evidence that [she] is an alien lawfully admitted for permanent residence, has been admitted as a refugee . . . or has been granted asylum . . . , such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title.

INA § 242(e)(2), 8 U.S.C. § 1252(e)(2).

The first and third queries are not at issue here. The Court's examination of the critical second question, whether the petitioner was ordered removed under §235, makes little sense unless it incorporates a determination of whether the petitioner was *legally* ordered removed under the expedited removal provisions. Otherwise, absolutely nothing would stop DHS from processing *all* aliens through expedited removal proceedings, regardless of whether they were within the group of aliens identified by the statute or regulations as not being subject to expedited removal, with no judicial review whatsoever of that practice. Basic notions of justice and fairness require that, if DHS's expedited removal orders are to enjoy the limited scope of review established by the statute, courts must be empowered to ensure that legal procedures were followed in entering those orders in the first place.[5] Thus, INA § 242(e)(2) should not be read to preclude a reviewing court from determining whether the applicable statute and regulations were followed and whether basic constitutional rights were violated.

The review and relief that Ms. Abreu-Gomez seeks is *precisely* the review and relief ordered in a similar case by the United States District Court for the Eastern District of Michigan. *American-Arab Anti-Discrimination Committee* ["*AADC*"] *v. Ashcroft*, 272 F. Supp. 2d 650

---

[5] Even though the Court cannot grant asylum or admission, Ms. Abreu-Gomez's request that this Court review the *process* by which she was found removable has precedent in other contexts. For example, courts are strictly limited in the degree to which they can review executive forfeiture decisions; however, they may examine the procedures by which the determinations are made. *See, e.g., In re $67,470.00*, 901 F.2d 1540 (11th Cir. 1990) ("This claim does not challenge the DEA's determination on the merits, but rather the nature of the adjudicatory process itself. As the issue presents a federal question, this court has jurisdiction to review the claim pursuant to 28 U.S.C. § 1331.").

(E.D. Mich. 2003). Although Respondents acknowledge the existence of the *AADC* decision, they discuss it after far less analogous cases and fail to distinguish it. Motion to Dismiss at 8. In *AADC*, petitioners were citizens of Lebanon who entered the United States using fraudulent advance parole documents. *Id.* at 654. A few years later, when the use of the fraudulent documents was discovered, petitioners were taken into INS custody, placed in § 235 proceedings, and ordered removed by an expedited removal order. *Id.* at 656. Petitioners filed a writ of habeas corpus under INA § 242(e)(2), arguing that, because they were not "arriving aliens," they should not have been subjected to expedited removal procedures. The government moved for dismissal based on, *inter alia*, a lack of subject matter jurisdiction. *Id.* at 659. The district court rejected the same arguments advanced by Respondents in this case, *i.e.*, that the court did not have the authority to review the determination that a particular person should be processed through expedited removal. The court held that:

> [i]n determining whether "the petitioner was ordered removed under the expedited removal statute," the Court finds that under the circumstances here, it has jurisdiction on habeas review to determine whether the expedited removal statute was *lawfully applied* to petitioners in the first place. The review for whether the statute has been lawfully applied is a review of the question of whether an order of expedited removal has been entered against them and whether the order "relates" to the individual. Importantly, the Court is not reviewing whether petitioners should be removed or whether they are admissible or whether they are entitled to relief from removal. Rather, the Court is determining whether the expedited removal procedure "relates to" petitioners in the sense that it lawfully applies to them. If the statute has not been lawfully applied, the question then becomes whether the unlawful application has violated petitioners' constitutional rights.

*Id.* at 663-64 (emphasis in original).

The cases relied on by Respondents in their Motion to Dismiss do not foreclose such a judicial evaluation. Some do not even pertain to habeas reviews and others attack the threshold determination of admissibility to the United States rather than the choice of the proceedings that followed that determination. Two of the cases Respondents cite involve petitioners who claimed

8

that, because they had visas, they were entitled to enter the United States. *Li v. Eddy*, 259 F.3d 1132, 1133 (9th Cir. 2001) ("Li filed this habeas corpus petition on June 12, 1997, contending her visa entitled her to entry into the United States and that her exclusion was therefore unlawful."), *later vacated as moot*, 324 F.3d 1109 (9th Cir. 2003); *Kommalapatti v. Reno*, 2000 WL 85949 ("[petitioner] has only argued that he has a right to be in this country…"). Ms. Abreu-Gomez did not have a visa when she attempted to enter the United States, and she does not claim any entitlement to entry. Rather, she merely argues that she is entitled to make her case in full, rather than expedited, removal proceedings.

Respondents' remaining cases similarly fail to foreclose the type of review that Ms. Abreu-Gomez seeks. One of the cases, *Brumme v. INS*, 275 F.3d 443 (5th Cir. 2001), specifically disavows any consideration of constitutional issues. *Brumme*, 275 F.3d at 449 ("we express no opinion as to jurisdiction, *vel non,* over constitutional challenges to such expedited removals"). Another, *In re Li*, is inapposite because the petitioners in that case were not even in the United States and were not processed through expedited removal at all. 71 F. Supp. 2d 1052, 1057. The issue there was whether INS must process and investigate the asylum applications of aliens who are not physically present in the United States. *Id.* Finally, *American Immigration Lawyers' Assn. v. Reno*, 18 F. Supp. 2d 38 (D.D.C. 1998) was a challenge to the expedited removal system as a whole under INA § 242(e)(3) rather than a petition for habeas corpus seeking to remedy specific constitutional and statutory violations. Ms. Abreu-Gomez is not primarily challenging the system as a whole; she merely requests an order compelling the Respondents to comply with DHS's own regulations and procedures implementing that system.

*Id.* at 58.⁶  DHS must treat Ms. Abreu-Gomez according to its own regulations and afford her the full § 240 procedures set forth in the INA and the subsequent immigration benefits available to all Cuban citizens.

Simply put, as an undisputed Cuban citizen, Ms. Abreu-Gomez is exempt from expedited removal proceedings and DHS's decision to place her in expedited removal, with full knowledge of her Cuban citizenship, plainly and clearly violated DHS's regulations and policies.  As a result, DHS violated her constitutional right to procedural Due Process.

Respondents now argue that their decision to label Ms. Abreu-Gomez as an arriving alien subject to expedited removal may not be reviewed by any federal court.  Following this reasoning to its natural result, Respondents would be free to label any alien as a candidate for expedited removal and, once so-designated, no court would be authorized to review the propriety of that label.⁷  The INA cannot be properly interpreted as having stripped the federal courts of jurisdiction to review DHS decisions to place aliens in expedited removal, nor is there any indication that Congress intended to do so.  Under the INA, this Court has subject matter jurisdiction over this action.

---

⁶        Ms. Abreu-Gomez has raised a claim to subject matter jurisdiction under INA § 242(e)(3) governing challenges to the implementation of the system as a whole.  This claim arose after her first habeas petition was dismissed by the Fifth Circuit, without the requisite § 242(e)(2) inquiry having been performed by any court.  She then filed the instant case, in which she challenged the expedited removal system, implemented so as to preclude §242(e)(2) review, in this Court within sixty days of the date she learned of that implementation.

⁷        Such an interpretation would implicate the Suspension Clause.  The Supreme Court has recently reaffirmed that the great writ of habeas corpus cannot be repealed by implication, but only by express legislative enactment.  *Demore v. Kim*, 538 U.S. 510, 123 S. Ct. 1708 (2003); *INS v. St. Cyr*, 533 U.S. 289, 121 S. Ct. 2271 (2001).

## II.   THIS COURT HAS PERSONAL JURISDICTION OVER RESPONDENTS.

Respondents' argument regarding personal jurisdiction is based on the erroneous assumption that Ms. Abreu-Gomez's core claim is a challenge to her present, physical custody.[8] It is not. Instead, Petitioner is challenging the expedited order of removal entered against her. This distinction is critical for purposes of personal jurisdiction.

As Respondents note, the Supreme Court recently held that the "immediate custodian" rule applies to cases in which the petitioner challenges his present, physical confinement. *Rumsfeld v. Padilla*, 124 S. Ct. 2711, 2718 (2004). However, this is not such a challenge. Indeed, where habeas corpus petitioners challenge a form of custody, *other than* present, physical confinement, the Supreme Court takes a different view. In those cases, like the Amended Petition here, petitioners may name as respondent the person who exercises legal control over their custody. *Padilla*, 124 S. Ct. at 2720.[9]

Ms. Abreu-Gomez's legal custodian is the person responsible for the removal order against her. Under the INA, "[t]he Secretary of Homeland Security shall be charged with the administration and enforcement of this Act and all other laws relating to the immigration and naturalization of aliens." INA § 103(a)(1); 8 U.S.C. § 1103(a)(1). Additionally, the Secretary of DHS "shall establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying

---

[8]   Ms. Abreu-Gomez recognizes that, as an "arriving alien" as defined by the INA, she is subject to mandatory detention until she is placed in § 240 removal proceedings and paroled pending her individual evidentiary hearing. Of course, like all other Cuban asylum seekers, Petitioner would be eligible for parole from custody after being placed in full § 240 removal proceedings and she intends to seek parole immediately upon commencement of such proceedings.

[9]   Because Ms. Abreu-Gomez is not challenging her present, physical confinement, the identity of her immediate custodian is completely irrelevant. The proper Respondent in this case is the "entity or person who exercises legal control" over the constructive custody that Petitioner does challenge, *i.e.*, the removal order.

out his authority under the provisions of this Act." INA § 103(a)(3); 8 U.S.C. § 1103(a)(3). Thus, the removal order was entered against Ms. Abreu-Gomez pursuant to the authority of the DHS Secretary and the DHS Assistant Secretary for ICE. These officials are Ms. Abreu-Gomez's legal custodians.[10] Because their principal offices are located within this district, and they perform their official duties here, this Court has personal jurisdiction over them.[11]

**III.   RESPONDENTS' ACTIONS VIOLATE DHS'S REGULATIONS AND WRITTEN POLICIES WITH RESPECT TO CUBANS.**

Ms. Abreu-Gomez has been illegally subjected to expedited removal proceedings and thereby deprived of her Due Process rights. She does not ask this Court to reach the merits of her request for asylum, nor does she request that this Court make any other determinations about her immigration status. Rather, she asks this Court only to afford her the review to which she is entitled under INA § 242(e)(2) -- *i.e.*, to order DHS to afford her an opportunity to be heard in full § 240 removal proceedings, and thereby to ensure that she is not denied her rights to procedural Due Process under the Fifth and Fourteenth Amendments to the United States Constitution.

---

[10]   The officer-in-charge at the detention facility in Pearsall, Texas is the "immediate" but not the "legal" custodian. He lacks the legal authority to deliver the relief Ms. Abreu-Gomez seeks. The Supreme Court confronted an analogous case when it considered a habeas corpus petition filed against a Kentucky court by an Alabama prisoner. In *Braden*, the petitioner did not challenge his physical confinement in Alabama; rather, he alleged that he was being denied his right to a speedy trial on a then three-year-old Kentucky indictment. *Braden*, 410 U.S. at 485. The district court in Kentucky ruled that it had jurisdiction because "it is the State of Kentucky which must take action." *Id.* at 487. The Court of Appeals reversed, based on the immediate custodian rule. *Id.* The Supreme Court reversed the ruling of the Court of Appeals, noting that while "the petitioner is confined in Alabama … his dispute is with the Commonwealth of Kentucky, not the State of Alabama." *Id.* at 499. Thus, notwithstanding the fact that the petitioner's present, physical custodian was the warden of the Alabama jail, the proper respondent to the habeas corpus petition was the Commonwealth of Kentucky, which had the authority to remedy the denial of the petitioner's constitutional right to a speedy trial.

[11]   If, for any reason, this Court finds that it lacks personal jurisdiction over the Respondents, the case should be transferred back to the Western District of Texas for the review of the expedited removal order authorized by INA § 242(e)(2). Respondents agree. Motion to Dismiss at 8-9.

12

### A.     Non-Citizens Have a Constitutional Right to Due Process.

As long as she is physically present in the United States, Ms. Abreu-Gomez possesses a constitutionally-guaranteed right to Due Process. Justice Stevens invoked this principle thirty years ago, holding that "[t]here are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law." *Mathews v. Diaz*, 426 U.S. 67, 77 (1975). This principle applies even if the alien's "presence in this country is unlawful, involuntary, or transitory." *Id.*; *accord*, *ACLU Foundation of Southern California v. Barr*, 952 F.2d 457, 472 (D.C. Cir. 1991) (there is no question that "aliens…are entitled to due process").

Though the Due Process protections afforded to aliens are less comprehensive than those enjoyed by U.S. citizens, once aliens arrive in the United States, they "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953). The Due Process to which these aliens are entitled "requires at the least that the immigration laws be properly applied to them – that the procedures utilized against them are lawfully applied." *AADC v. Ashcroft*, 272 F. Supp. 2d at 669. As explained below, the application of expedited removal procedures to Ms. Abreu-Gomez directly violated DHS's own regulations and policies concerning the process. Therefore, Respondents have violated Ms. Abreu-Gomez's constitutional right to Due Process by attempting to remove her from the country on an expedited basis.

### B.     DHS Regulations and Written Directives Have the Force of Law and Are Binding on the Agency.

Ms. Abreu-Gomez's Cuban citizenship places her squarely within the category of persons exempted from expedited removal proceedings pursuant to DHS directives that could not be

more clearly stated. Indeed, the August 11, 2004 Federal Register notice expanded the group of persons to whom DHS would thereafter apply expedited removal proceedings in parts of the Southwestern United States. The very last sentence of the Regulation stated:

> (6) The expedited removal proceedings contemplated by this notice *will not be initiated against Cuban citizens or nationals.*

69 Fed. Reg. at 48881 (emphasis added).

On September 14, 2004, Victor Cerda, the Acting Director of the ICE Office of Detention and Removal Operations at DHS Headquarters in Washington, D.C., issued a directive to "All Field Office Directors" titled "Expedited Removal Guidance." It provided them with four pages of detailed information about how expedited removal must be carried out. Using plain, unambiguous language, the Guidance states that

> "ER [expedited removal] *will not be applied to* unaccompanied juveniles, *citizens and nationals of Cuba* and El Salvador, and aliens who are members [of the *American Baptist Churches* Class Action Settlement]."

*See* Cerda Directive (emphasis added). Nothing in the Cerda Directive limits its application to only those persons covered by the August 11th Regulation, nor does it permit any "citizens and nationals of Cuba" to be subject to expedited removal.

"It is well settled that an agency, even one that enjoys broad discretion, must adhere to voluntarily adopted, binding policies that limit its discretion." *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987). *See also Morton v. Ruiz*, 415 U.S. 199, 235 (1974); *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266 (1954); *Massachusetts Fair Share v. Law Enforcement Assistance Administration*, 758 F.2d 708, 712 (D.C. Cir. 1985). This precept is *not* limited to formal, published regulations; rather, "internal guidelines and rules not formally promulgated" may also bind federal agencies. *Padula*, 822 F.2d at 100. *See also Appalachian Power Co. v. E.P.A.*, 208 F.3d 1015, 1021 (D.C. Cir. 2000); *Chiron Corp. & Perspective Biosystems, Inc.*, 198 F.3d 935, 943 (D.C. Cir. 1999); *Massachusetts Fair Share*, 758 F.2d at 712.

The U.S. Court of Appeals for the District of Columbia recently identified two formulations of the analytical criteria for determining whether agencies are bound by particular statements. *Croplife America v. EPA*, 329 F.3d 876 (D.C. Cir. 2003). The first formulation "focuses on the effects of the agency action." *Id.* at 883. Under this formulation, "the court should consider whether the agency action (1) 'impose[s] any rights and obligations,' or (2) 'genuinely leaves the agency and its decisionmakers free to exercise discretion.'" *Id.* (quoting *Cmty. Nutrition Inst. v. Young*, 818 F.2d 943, 946 (D.C. Cir. 1987)). The second formulation "focuses on the agency's expressed intentions." *Id.* Thus, "the court should consider '(1) the Agency's own characterization of the action; (2) whether the action was published in the Federal Register or the Code of Federal Regulations; and (3) whether the action has binding effects on private parties or on the agency.'" *Id.* (quoting *Molycorp., Inc. v. EPA,* 197 F.3d 543, 545 (D.C. Cir. 1999)).

The *Croplife America* court noted that "these two lines of analysis overlap at step three of the *Molycorp* formulation, 'in which the court determines whether the agency action binds private parties or the agency itself with the 'force of law.''" *Id*. (quoting *General Electric Co. v. EPA*, 290 F.3d 377, 382 (D.C. Cir. 2002)). This test conforms with the statements of other courts to the effect that the "general test [for determining whether an agency's statement is binding] is whether the agency intended to bind itself with the pronouncement." *Chiron Corp. & Perspective Biosystems, Inc.*, 198 F.3d at 944. "Agency intent is 'ascertained by an examination of the provision's language, its context, and any available extrinsic evidence.'" *Id.* Finally, as a matter of "fair play and in abhorrence of unjust discrimination," several courts have held that "a federal agency must adhere firmly to self-adopted rules by which the interests of others are to be regulated." *Massachusetts Fair Share*, 758 F.2d at 712. *See also Morton*, 415 U.S. at 235 ("[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."); *Chiron Corp. & Perspective Biosystems, Inc.*, 198 F.3d at 944 ("[m]anuals or procedures may be binding on an agency when they affect individuals' rights").

15

Applying these factors, Director Cerda intended to bind DHS with his September 14, 2004 Guidance. The document was sent to Field Office Directors, a group of high ranking supervisors, and instructed them how to implement expedited removal. The language he used was definitive: "Expedited removal will not be applied to . . . nationals of Cuba …." Courts have placed great emphasis on the language used by agencies and have "found decisive the choice between the words 'will' and 'may,'" holding that the "use of 'will' indicates [that a] statement is in fact a binding norm." *Cmty. Nutrition Inst.*, 818 F.2d at 946 (citing *American Bus Association v. United States,* 627 F.2d 525, 532 (D.C. Cir. 1980)). Indeed, the text in Director Cerda's Guidance is nearly identical to the *Croplife America* language; *i.e.,* "clear and unequivocal language, which… creates a 'binding norm' that is 'finally determinative of the issues or rights to which it is addressed.'" *Croplife America*, 329 F.3d at 882 (quoting *Chamber of Commerce v. U.S. Dep't of Labor,* 174 F.3d 206, 212 (D.C. Cir. 1999)).

Further, there can be no serious question about whether Director Cerda's Guidance impacts the individual rights of the persons to whom it applies. By failing to honor its own rules, DHS has denied Ms. Abreu-Gomez her right to participate and be heard in full removal proceedings. In full removal proceedings, Ms. Abreu-Gomez would enjoy procedural protections not afforded to those in expedited proceedings, including, but by no means limited to, the opportunity to be represented by counsel, the opportunity to introduce evidence in support of her claims, and to examine any evidence used against her. INA § 240; 8 U.S.C. § 1229a.

Because DHS violated its own rules, Ms. Abreu-Gomez was denied the benefits of these and other procedural safeguards designed to ensure the only thing she asks: that she receives a full and fair hearing. This Court has the statutory and constitutional authority to afford Ms. Abreu-Gomez precisely that remedy. 8 U.S.C. § 1252(e)(4) ("the court may order no remedy or relief other than to require that the petitioner be provided a hearing in accordance with section 240 [8 U.S.C. § 1229a]"). This was the same limited remedy that the court granted in the *AADC*

16

case, noting that "[t]he Bureau is free to institute removal proceedings against petitioners under 8 U.S.C. § 1229a [INA § 240]." 272 F. Supp. 2d at 670.[12]

As Justice Douglas eloquently stated, "[i]t is procedure that spells out much of the difference between rule by law and rule by whim or caprice. Steadfast adherence to strict procedural safeguards is our main assurance that there will be equal justice under law." *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 179 (1951) (Douglas, J., concurring). Therefore, this Court should deny Respondent's Motion to Dismiss and order DHS to afford Petitioner the opportunity to make her case in a full § 240 removal proceeding.

## CONCLUSION

For the foregoing reasons, Respondents' Motion to Dismiss Petitioner's Emergency Petition for a Writ of Habeas Corpus and Emergency Motion for Preliminary Injunction should be denied.

Respectfully submitted,

/s/ Douglas W. Baruch
Douglas W. Baruch
DC Bar No. 414354
/s/ Karen T. Grisez
DC Bar No. 435092
Fried Frank Harris Shriver & Jacobson LLP
1001 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20004
(202) 639-7000 (tel)
(202) 639-7003 (fax)

---

[12] Noting that the petitioners there might indeed be ordered removed at the end of their § 240 proceedings, the court stated that, "[w]hile the Court's decision may be only a pyrrhic victory for petitioners…. [I]t is a victory nonetheless because they have vindicated their right to have the immigration laws lawfully applied to them." *Id.* at 671.

Of Counsel:

EDUARDO SOTO, P.A.
RENEÉ SOTO
999 Ponce de Leon Blvd.
Suite 940
Coral Gables, Florida  33134
Tel. (305) 446-8686
Fax (305) 529-0445

Attorneys for Petitioner