(OMB) for review and clearance under the Paperwork Reduction Act of 1995.

**DATES:** Fax written comments on the collection of information by September 10, 2004.

**ADDRESSES:** OMB is still experiencing significant delays in the regular mail, including first class and express mail, and messenger deliveries are not being accepted. To ensure that comments on the information collection are received, OMB recommends that written comments be faxed to the Office of Information and Regulatory Affairs, OMB, Attn: Fumie Yokota, Desk Officer for FDA, FAX: 202-395-6974.

**FOR FURTHER INFORMATION CONTACT:** Karen L. Nelson, Office of Management Programs (HFA-250), Food and Drug Administration, 5600 Fishers Lane, Rockville, MD 20857, 301-827-1482.

**SUPPLEMENTARY INFORMATION:** In compliance with 44 U.S.C. 3507, FDA has submitted the following proposed collection of information to OMB for review and clearance.

**Draft Guidance for Industry on Pharmacogenomic Data Submissions (OMB Control Numbers 0910-0014, 0910-0001, and 0910-0338)—Extension**

The guidance provides recommendations to sponsors submitting or holding investigational new drugs (INDs), new drug applications (NDAs), or biologic licensing applications (BLAs) on what pharmacogenomic data should be submitted to the agency during the drug development process. Sponsors holding and applicants submitting INDs, NDAs, or BLAs are subject to FDA requirements in parts 312, 314, and 601 (21 CFR 312, 314, and 601) for submitting to the agency data relevant to drug safety and efficacy (§§ 312.22, 312.23, 312.31, 312.33, 314.50, 314.81, 601.2, and 601.12).

*Description of Respondents:* Sponsors submitting or holding INDs, NDAs, or BLAs for human drugs and biologics.

*Burden Estimate:* The guidance interprets FDA regulations for IND, NDA, or BLA submissions, clarifying when the regulations require pharmacogenomics data to be submitted and when the submission of such data is voluntary. The pharmacogenomic data submissions described in the guidance that are required to be submitted to an IND, NDA, BLA, or annual report are covered by the information collection requirements under parts 312, 314, and 601 and are approved by OMB under control numbers 0910-0014 (part 312—INDs; approved until January 1, 2006); 0910-0001 (part 314—NDAs and annual reports; approved until March 31, 2005); and 0910-0338 (approved until August 31, 2005).

The guidance distinguishes between pharmacogenomic tests that may be considered valid biomarkers appropriate for regulatory decisionmaking, and other, less well developed exploratory tests. The submission of exploratory pharmacogenomic data is not required under the regulations, although the agency encourages the voluntary submission of such data.

The guidance describes the voluntary genomic data submission (VGDS) that can be used for such a voluntary submission. The guidance does not recommend a specific format for the VGDS, except that such a voluntary submission be designated as a VGDS. The data submitted in a VGDS and the level of detail should be sufficient for FDA to be able to interpret the information and independently analyze the data, verify results, and explore possible genotype-phenotype correlations across studies. FDA does not want the VGDS to be overly burdensome and time-consuming for the sponsor.

FDA has estimated the burden of preparing a voluntary submission described in the guidance that should be designated as a VGDS. Based on FDA's familiarity with sponsors' interest in submitting pharmacogenomic data during the drug development process, FDA estimates that approximately 20 sponsors will submit approximately 80 VGDSs and that, on average, each VGDS will take approximately 10 hours to prepare and submit to FDA.

In the **Federal Register** of November 4, 2003 (68 FR 62461), FDA published a 60-day notice requesting public comment on the information collection provisions. No comments were received on the information collection estimates.

TABLE 1.—ESTIMATED ANNUAL REPORTING BURDEN[1]

| | Number of Respondents | Number of Responses per Respondent | Total Annual Responses | Hours per Response | Total Hours |
|---|---|---|---|---|---|
| Voluntary genomic data submissions | 20 | 4 | 80 | 10 | 800 |

[1] There are no capital costs or operating and maintenance costs associated with this collection.

Dated: August 5, 2004.

Jeffrey Shuren,

*Assistant Commissioner for Policy.*

[FR Doc. 04-18360 Filed 8-6-04; 12:04 pm]

**BILLING CODE 4160-01-S**

---

**DEPARTMENT OF HOMELAND SECURITY**

**Bureau of Customs and Border Protection**

**Designating Aliens For Expedited Removal**

**AGENCY:** Bureau of Customs and Border Protection, DHS.

**ACTION:** Notice.

**SUMMARY:** This notice authorizes the Department of Homeland Security to place in expedited removal proceedings any or all members of the following class of aliens: Aliens determined to be inadmissible under sections 212(a)(6)(C) or (7) of the Immigration and Nationality Act who are present in the U.S. without having been admitted or paroled following inspection by an immigration officer at a designated port-of-entry, who are encountered by an immigration officer within 100 air miles of the U.S. international land border, and who have not established to the satisfaction of an immigration officer that they have been physically present in the U.S. continuously for the fourteen-day (14-day) period immediately prior to the date of encounter. DHS believes that exercising its statutory authority to place these individuals in expedited removal proceedings will enhance national security and public safety by facilitating prompt immigration determinations, enabling DHS to deal more effectively with the large volume of persons seeking illegal entry, and ensure removal from the country of those not granted relief, while at the same time protecting the rights of the individuals affected.

*Exhibit A*

**48878** Federal Register / Vol. 69, No. 154 / Wednesday, August 11, 2004 / Notices

**DATES:** This notice is effective on August 11, 2004.

**ADDRESSES:** Please submit written comments to: Regulations Branch, Office of Regulations and Rulings, Bureau of Customs and Border Protection, 1300 Pennsylvania Avenue, NW., Washington, DC 20229. *See* **SUPPLEMENTARY INFORMATION** section for more details on submission of comments.

**FOR FURTHER INFORMATION CONTACT:** Dana E. Graydon, Acting Associate Chief, Office of Border Patrol, U.S. Customs and Border Protection, 1300 Pennsylvania Ave., NW., Suite 6.5-E, Washington, DC 20229, *dana.graydon@dhs.gov*, 202-344-3153.

**SUPPLEMENTARY INFORMATION:** Please submit written comments, original and two copies, to the address listed above on or before after October 12, 2004. Submitted comments may be inspected at the Office of Regulations and Rulings, Bureau of Customs and Border Protection, 799 9th Street, NW., Washington, DC, during regular business hours. Arrangements to inspect submitted comments should be made in advance by calling Mr. Joseph Clark at (202) 572-8768.

Section 302 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Public Law 104-208, Div. C, 110 Stat. 3009-546, amended section 235(b) of the Immigration and Nationality Act ("Act"), 8 U.S.C. 1225(b), to authorize the Attorney General (now the Secretary of Homeland Security as designated under the Homeland Security Act of 2002) to remove, without a hearing before an immigration judge, aliens arriving in the U.S. who are inadmissible under sections 212(a)(6)(C) or 212(a)(7) of the Act, 8 U.S.C. 1182(a)(6)(C) and 1182(a)(7). Under section 235(b)(1) of the Act, 8 U.S.C. 1225(b)(1), expedited removal proceedings may be applied to two categories of aliens. First, section 235(b)(1)(A)(i) of the Act, 8 U.S.C. 1225(b)(1)(A)(i), permits expedited removal proceedings for aliens who are "arriving in the United States." "Arriving aliens" are defined by regulation to mean "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international waters and brought into the United States by any means whether or not to a designated port-of-entry." (8 CFR 1.1(q)). Cuban citizens who arrive at U.S. ports-of-entry by aircraft are exempted from this first category of aliens subject to expedited removal under section 235(b)(1)(F) of the Act, 8 U.S.C. 1225(b)(1)(F). Second, section 235(b)(1)(A)(iii) of the Act, 8 U.S.C. 1225(b)(1)(A)(iii), permits the Attorney General (now the Secretary of Homeland Security), in his or her sole and unreviewable discretion, to designate certain other aliens to whom the expedited removal provisions may be applied. Section 235(b)(1)(A)(iii), 8 U.S.C. 1225(b)(1)(A)(iii), authorizes the Secretary to apply (by designation) expedited removal proceedings to aliens who arrive in, attempt to enter, or have entered the U.S. without having been admitted or paroled following inspection by an immigration officer at a designated port-of-entry, and who have not established to the satisfaction of the immigration officer that they have been physically present in the U.S. continuously for the two-year period immediately prior to the date of determination of inadmissibility.

By statute, an alien present in the U.S. who has not been admitted shall be deemed for purposes of the Act to be an applicant for admission. 8 U.S.C. 1225(a), section 235(a)(1) of the Act. Once alienage has been established, an alien applicant for admission has the burden of establishing that he or she is clearly and beyond doubt entitled to be admitted and is not inadmissible under section 212 of this Act. Aliens who have not been admitted or paroled and who are subject to expedited removal under this designation have the burden of proof to show affirmatively that they are not inadmissible and have maintained the required continuous physical presence in the U.S. Any absence from the U.S. shall serve to break the period of continuous physical presence. 8 CFR 235.3(b)(1)(ii).

Pursuant to 8 CFR 235.3(b)(1)(ii) (62 FR 10312, 10355, March 6, 1997), the Attorney General provided that her designation authority would be exercised by the Commissioner of the former Immigration and Naturalization Service (INS). Pursuant to sections 102(a), 441, 1512(d) and 1517 of the Homeland Security Act of 2002, Public Law 107-296, 116 Stat. 2310, 6 U.S.C. 112, 251, 552(d), 557, and 8 CFR 2.1, the authority of the Attorney General and the Commissioner of the INS in accordance with 8 U.S.C. 235(b)(1)(A)(iii) and 8 CFR 235.3(b)(1)(ii), respectively, was transferred to the Secretary of Homeland Security, and references to the Attorney General or the Commissioner in the statute and regulations are deemed to refer to the Secretary.

DHS has a pressing need to improve the security and safety of the nation's land borders, and expanding expedited removal between ports of entry will provide DHS officers with a valuable tool to meet that objective. Presently DHS officers cannot apply expedited removal procedures to the nearly 1 million aliens who are apprehended each year in close proximity to the borders after illegal entry. It is not logistically possible for DHS to initiate formal removal proceedings against all such aliens. This is primarily a problem along the southern border, and thus the majority of such aliens are Mexican nationals, who are "voluntarily" returned to Mexico without any formal removal order. Based upon anecdotal evidence, many of those who are returned to Mexico seek to reenter the U.S. illegally, often within 24 hours of being voluntarily returned (it is not uncommon for DHS officers to apprehend the same individual many times over a span of several months). On the southern land border with Mexico, those aliens who are apprehended who are not Mexican nationals cannot be returned to Mexico. Currently, non-Mexican nationals who are inadmissible may be voluntarily returned to their country of citizenship or nationality via aircraft, or placed in formal removal proceedings under section 240 of the Act. Because DHS lacks the resources to detain all third-country nationals (aliens who are neither nationals of Mexico nor Canada) who have been apprehended after illegally crossing into the U.S. from both the northern and southern land borders, many of these aliens are released in the U.S. each year with a notice to appear for removal proceedings. Many of these aliens subsequently fail to appear for their removal proceedings, and then disappear in the U.S.

Without limiting its ability to exercise its discretion in the event of a national emergency, other unforeseen events, or a change in circumstances, DHS plans under this designation as a matter of prosecutorial discretion to apply expedited removal only to (1) third-country nationals and (2) to Mexican and Canadian nationals with histories of criminal or immigration violations, such as smugglers or aliens who have made numerous illegal entries. We recognize that certain aliens, including unaccompanied minors, members of the Class Action Settlement in *American Baptist Churches v. Thornburgh*, 760 F. Supp. 796 (N.D. Cal. 1991) (which settled the claims of a class of Salvadorans and Guatemalans regarding handling of asylum claims), and aliens who may be eligible for cancellation of removal under section 240A of the Act,

for example, may possess equities that weigh against the use of expedited removal proceedings. Accordingly, in appropriate circumstances and as an exercise of prosecutorial discretion, officers will be able to permit certain aliens described in this notice to return voluntarily, withdraw their application for admission, or to be placed into regular removal proceedings under section 240 of the Act in lieu of expedited removal proceedings.

In the interests of focusing enforcement resources upon unlawful entries that have a close spatial and temporal nexus to the border, this notice does not implement the full nationwide expedited removal authority available to DHS pursuant to section 235 of the Act, 8 U.S.C. 1225. Nor does this notice limit DHS from implementing the full nationwide enforcement authority of the statute through publication of a subsequent Federal Register notice. The statute provides DHS with the authority to apply expedited removal to aliens who cannot establish that they have maintained a physical presence in the U.S. continuously for the two-year period immediately prior to the date of determination of inadmissibility. The statute also does not limit geographically the application of expedited removal. At this time, DHS has elected to assert and implement only that portion of the authority granted by the statute that bears close temporal and spatial proximity to illegal entries at or near the border. Accordingly, this notice applies only to aliens encountered within 14 days of entry without inspection and within 100 air miles of any U.S. international land border.

It is anticipated under this designation that expedited removal will be employed against those aliens who are apprehended immediately proximate to the land border and have negligible ties or equities in the U.S. Nevertheless, this designation extends to a 100-mile operational range because many aliens will arrive in vehicles that speedily depart the border area, and because other recent arrivals will find their way to near-border locales seeking transportation to other locations within the interior of the U.S. The 100-mile range already has been established by regulation as a reasonable distance from the external boundary of the U.S. for the purpose of preventing the illegal entry of aliens into the U.S. See section 287(a)(3) of the Act; 8 CFR 287.1(a)(2) and (c).

The use of expedited removal orders, which prohibit reentry for a period of 5 years, will deter unlawful entry, and make it possible to pursue future criminal prosecution against those aliens who continue to enter the U.S. in violation of law. It will also accelerate the processing of inadmissible aliens because it generally does not require an appearance before an immigration judge, except in certain circumstances. Deterring future entries and accelerating removals will enhance DHS's ability to oversee the border, and to focus its resources on threats to public safety and to national security. DHS also believes that the use of expedited removal will likely interfere with human trafficking and alien smuggling operations, which are growing in sophistication, and which induce aliens from all over the world to cross the country's borders. Alien smuggling organizations have been responsible for numerous violent crimes, including homicide, hostage-taking, and crimes involving sexual exploitation. DHS expects that the expansion of expedited removal under this notice will ultimately reduce the number of aliens who risk injury or death attempting to enter the U.S. through difficult mountainous and desert terrain, as well as decrease property crimes in border areas.

All aliens placed into expedited removal as a result of this designation will have the same rights to a credible fear screening by an asylum officer, and the right to review of an adverse credible fear determination by an immigration judge, that are provided to arriving aliens who are currently placed into expedited removal after being denied admission at a port of entry. Any alien who falls within this designation, who is placed in expedited removal proceedings, and who indicates an intention to apply for asylum or who asserts a fear of persecution or torture will be interviewed by an asylum officer who will determine whether the alien has a credible fear as defined in section 235(b)(1)(B)(v) of the Act, 8 U.S.C. 1225(b)(1)(B)(v). If that standard is met, the alien will be referred to an immigration judge for a removal proceeding under section 240 of the Act, sections 235(b)(1)(A)(ii) and (B) of the Act, 8 U.S.C. 1225(b)(1)(A)(ii) and (B); 8 CFR 235.3(b)(4). The Forms I-867A and I-867B currently used by officers who process aliens under the expedited removal program provide to all aliens in expedited removal proceedings information concerning the credible fear interview, in accordance with the statutory requirement at section 235(b)(1)(B)(iv) of the Act, 8 U.S.C. 1225(b)(1)(B)(iv). The forms require that the officer inquire whether the alien has any reason to fear harm if returned to his or her country. Officers authorized to administer the expedited removal program will be trained to be alert for any verbal or non-verbal indications that the alien may be afraid to return to his or her homeland.

Similarly, all aliens placed into expedited removal as a result of this designation, who claim lawful permanent resident, refugee, asylee status, or U.S. citizenship will receive the same procedures, including the right to review of any adverse expedited removal order by an immigration judge, that are provided to arriving aliens making similar status claims who are currently placed in expedited removal at ports of entry under 8 CFR 235.3(b). DHS, with limited exceptions, plans to detain aliens who are placed in expedited removal under this designation. Section 235(b)(1)(B)(iii)(IV) of the Act, 8 U.S.C. 1225(b)(1)(B)(iii)(IV), and 8 CFR 235.3(b)(2)(iii) direct that any alien who is placed in expedited removal proceedings shall be detained pending a final determination of credible fear and, if found not to have such a fear, such alien shall be detained until removed. Parole of such alien under 8 CFR 235.3(b)(2)(iii) may be permitted only when the Secretary determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective. Section 235(b)(1)(B)(ii) of the Act, 8 U.S.C. 1225(b)(1)(B)(ii), directs that if a credible fear has been established, the alien shall be detained for further consideration of the protection claim or claims. Under Department of Justice regulations, immigration judge review of custody determinations is permitted only for bond and custody determinations pursuant to section 236 of the Act, 8 U.S.C. 1226, 8 CFR 1236, and 8 CFR 1003.19(a). Aliens subject to expedited removal procedures under section 235 of the Act (including those aliens who are referred after a positive credible fear determination to an immigration judge for proceedings under section 240 of the Act) are not eligible for bond, and therefore are not eligible for a bond redetermination before an immigration judge. Parole of aliens determined to have a credible fear may be considered in accordance with section 212(d)(5) of the Act, 8 U.S.C. 1182(d)(5), and 8 CFR 212.5.

The expedited removal authority implemented in this Notice will not be employed against Cuban citizens because removals to Cuba cannot presently be assured and for other U.S. policy reasons.

The Department has determined that good cause exists under the

Administrative Procedure Act (APA), 5 U.S.C. 553(b)(3)(B) and (d)(3), to exempt this notice from the notice and comment requirements under the APA. Delaying the implementation of this notice to allow public notice and comment would be impracticable, unnecessary and contrary to the public interest.

Congress explicitly authorized the Secretary of Homeland Security to designate categories of aliens to whom expedited removal proceedings may be applied, and made clear that "[s]uch designation shall be in the sole and unreviewable discretion of the Secretary and may be modified at any time." Section 235(b)(1)(A)(iii)(1) of the Act, 8 U.S.C. 1225(b)(1)(A)(iii)(I). The large volume of illegal entries, and attempted illegal entries, and the attendant risks to national security presented by these illegal entries, necessitates that DHS expand the expedited removal program as provided in this designation. DHS is confident that the experience gained through implementation of the expedited removal program at ports of entry will enable DHS to expand the program in a manner that is both effective and humane.

There is an urgent need to enhance DHS's ability to improve the safety and security of the nation's land borders, as well as the need to deter foreign nationals from undertaking dangerous border crossings, and thereby prevent the needless deaths and crimes associated with human trafficking and alien smuggling operations. The expansion of expedited removal will increase the deterrence of illegal entries by ensuring that apprehension quickly leads to removal. This is especially critical because of the environmental dangers faced by aliens illegally entering the U.S. across desert or mountainous areas. In the Arizona desert alone, since the initiation of the Arizona Border Control Initiative (ABC) in March of 2004, the Border Patrol has rescued hundreds of aliens in distress and has unfortunately discovered over 40 aliens who have died in the attempt to enter the U.S.

This designation is necessary to remove quickly from the U.S. aliens who are encountered shortly after illegally entering the U.S. across the land borders. The ability to detain aliens while admissibility and identity is determined and protection claims are adjudicated, as well as to quickly remove aliens without protection claims or claims to lawful status, is a necessity for national security and public safety. As a critical element of a number of DHS initiatives to enhance security along the border, the expansion of expedited removal will increase national security, diminish the number of illegal entries, and impair the ability of smuggling organizations to operate. Accordingly, for the foregoing reasons, the Department has determined that public notice and comment prior to promulgation of this notice would be impracticable, unnecessary and contrary to the public interest as those terms are used under the APA.

Although the Department believes for the foregoing reasons that pre-promulgation notice and comment procedures are not statutorily mandated in this case, DHS is interested in receiving comments from the public on all aspects of the expedited removal program, but especially on the effectiveness of the program, problems envisioned by the commenters, and suggestions on how to address those problems. DHS believes that by maintaining a dialogue with interested parties, DHS can ensure that the program is even more effective in combating and deterring illegal entry, while at the same time protecting the rights of the individuals affected.

The expansion of expedited removal under this notice will also support the Arizona Border Control Initiative (ABC), a program designed to secure and protect the Arizona border. Working with other Federal, State, local and tribal entities, DHS has placed significant personnel and technical assets on the border to decrease the deaths of illegal immigrants in the desert; and to lower the rate of violent crime related to illegal border traffic in Southern Arizona. The ABC began operations in March 2004. For the reasons stated above, the ABC's success will rely in part upon the ability of DHS officers to place inadmissible aliens apprehended shortly after illegal entry into expedited removal.

Every year, illegal aliens from many different countries continue to enter the U.S. illegally across the nation's land borders. It is critical for public safety and national security that these aliens are not released into the U.S. without adequate verification of their identities and backgrounds.

### Notice of Designation of Aliens Subject to Expedited Removal Proceedings

Pursuant to section 235(b)(1)(A)(iii) of the Immigration and Nationality Act ("Act") and 8 CFR 235.3(b)(1)(ii), I order as follows:

(1) Except as provided in paragraph (5), the Department of Homeland Security, through its component bureaus, may place in expedited removal proceedings any or all members of the following class of aliens: Aliens who are inadmissible under sections 212(a)(6)(C) or (7) of the Act, who are physically present in the U.S. without having been admitted or paroled following inspection by an immigration officer at a designated port-of-entry, who are encountered by an immigration officer within 100 air miles of any U.S. international land border, and who have not established to the satisfaction of an immigration officer that they have been physically present in the U.S. continuously for the 14-day period immediately prior to the date of encounter. Each alien subject to this notice bears the affirmative burden to show to the satisfaction of an immigration officer that the alien has been present in the U.S. continuously for the relevant 14-day period. This notice does not apply to aliens who arrive at U.S. ports-of-entry, as these aliens are already subject to expedited removal. This notice will be given effect only with respect to apprehensions made within the CBP Border Patrol sectors of (Laredo, McAllen, Del Rio, Marfa, El Paso, Tucson, Yuma, El Centro, San Diego, Blaine, Spokane, Havre, Grand Forks, Detroit, Buffalo, Swanton, and Houlton).

(2) Any alien who falls within this designation who indicates an intention to apply for asylum or who asserts a fear of persecution or torture will be interviewed by an asylum officer to determine whether the alien has a credible fear as defined in section 235(b)(1)(B)(v) of the Act, 8 U.S.C. 1225(b)(1)(B)(v). If that standard is met, the alien will be referred to an immigration judge for proceedings under section 240 of the Act, 8 U.S.C. 1229a.

(3) Any alien who is placed in expedited removal proceedings under this designation who claims lawful permanent resident, refugee, asylee status, or U.S. citizenship will be processed in accordance with the procedures provided in 8 CFR 235.3(b) and 8 CFR 1235.3(b).

(4) Any alien who is placed in expedited removal proceedings under this designation will be detained pursuant to section 235(b) of the Act, 8 U.S.C. 1225(b), with certain exceptions, until removed. However, aliens determined to have a credible fear may be considered by DHS for parole in accordance with section 212(d)(5) of the Act and 8 CFR 212.5. Aliens detained pursuant to the expedited removal provisions under section 235 of the Act (including those aliens who are referred after a positive credible fear determination to an immigration judge for proceedings under section 240 of the Act) are not eligible for bond, and therefore are not eligible for a bond

redetermination before an immigration judge.

(5) This notice applies to aliens described in paragraph (1) who are encountered within the U.S. beginning August 11, 2004.

(6) The expedited removal proceedings contemplated by this notice will not be initiated against Cuban citizens or nationals.

Dated: August 3, 2004.

Tom Ridge,

*Secretary of Homeland Security.*

[FR Doc. 04-18469 Filed 8-10-04; 8:45 am]

BILLING CODE 4820-02-P

---

## DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

[Docket No. FR-4903-N-63]

### Notice of Proposed Information Collection: Comment Request; Contract and Subcontract Activity

**AGENCY:** Office of the Chief Information Officer, HUD.

**ACTION:** Notice.

**SUMMARY:** The proposed information collection requirement described below will be submitted to the Office of Management and Budget (OMB) for review, as required by the Paperwork Reduction Act. The Department is soliciting public comments on the subject proposal.

This is a request for approval of a revision to the currently approved information collection, which enables HUD to monitor and evaluate Minority Business Enterprise (MBE) activities against the total program activity and the designated MBE goals. Reports are submitted annually to Congress. This information collection combines two previously approved collections, OMB control numbers 2577-0088 and 2502-0355. OMB control number 2535-pending will now be used for this collection.

**DATES:** *Comments due:* October 12, 2004.

**ADDRESSES:** Interested persons are invited to submit comments regarding this proposal. Comments should refer to the proposal by name and/or OMB Control Number and should be sent to: Wayne Eddins, Reports Management Officer, AYO, Department of Housing and Urban Development, 451 Seventh Street, SW., Washington, DC 20410; e-mail *Wayne_Eddins@HUD.gov*; telephone (202) 708-2374. This is not a toll-free number. Copies of available documents may be obtained from Mr. Eddins and at HUD's Web site at *http://www5.hud.gov:63001/po/i/icbts/collectionsearch.cfm.*

**FOR FURTHER INFORMATION CONTACT:** Lillian Deitzer, Information Technology Specialist, AYO, Department of Housing and Urban Development, 451 Seventh Street, SW., Washington, DC 20410; e-mail *Lillian_L_Deitzer@HUD.gov*; telephone (202) 708-2374. This is not a toll-free number.

**SUPPLEMENTARY INFORMATION:** The Department will submit the proposed information collection to OMB for review, as required by the Paperwork Reduction Act of 1995 (44 U.S.C. Chapter 35, as amended).

This Notice is soliciting comments from members of the public and affecting agencies concerning the proposed collection of information to: (1) Evaluate whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility; (2) Evaluate the accuracy of the agency's estimate of the burden of the proposed collection of information; (3) Enhance the quality, utility, and clarity of the information to be collected; and (4) Minimize the burden of the collection of information on those who are to respond; including through the use of appropriate automated collection techniques or other forms of information technology, e.g., permitting electronic submission of responses.

This Notice also lists the following information:

*Title of Proposal:* Contract and Subcontract Activity.

*OMB Control Number, if applicable:* 2535-pending.

*Description of the need for the information and proposed use:* Information will enable HUD to monitor and evaluate Minority Business Enterprise (MBE) activities against the total program activity and the designated MBE goals. Reports are submitted annually to Congress. This information collection combines two previously approved collections, OMB control numbers 2577-0088 and 2502-0355. OMB control number 2535-pending will now be used for this collection.

*Agency form numbers, if applicable:* HUD 2516.

*Estimation of the total number of hours needed to prepare the information collection including number of respondents, frequency of response, and hours of response:* An estimation of the total numbers of hours needed to prepare the information collection is 5,000, number of respondents is 5,000, frequency of response is "annually," and the hours per response is 1 hour.

*Status of the proposed information collection:* Revision of a currently approved collection.

**Authority:** Section 3506 of the Paperwork Reduction Act of 1995, 44 U.S.C. Chapter 35, as amended.

Dated: August 4, 2004.

Wayne Eddins,

*Departmental Reports Management Officer, Office of the Chief Information Officer.*

[FR Doc. 04-18301 Filed 8-10-04; 8:45 am]

BILLING CODE 4210-72-P

---

## DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

[Docket No. FR-4907-N-26]

### Notice of Proposed Information Collection: Comment Request; Automated Clearing House (ACH) Program Application—Title I Insurance Charge Payments System

**AGENCY:** Office of the Assistant Secretary for Housing—Federal Housing Commissioner, HUD.

**ACTION:** Notice.

**SUMMARY:** The proposed information collection requirement described below will be submitted to the Office of Management and Budget (OMB) for review, as required by the Paperwork Reduction Act. The Department is soliciting public comments on the subject proposal.

**DATES:** *Comments Due Date:* October 12, 2004.

**ADDRESSES:** Interested persons are invited to submit comments regarding this proposal. Comments should refer to the proposal by name and/or OMB Control Number and should be sent to: Wayne Eddins, Reports Management Officer, Department of Housing and Urban Development, 451 7th Street, SW., L'Enfant Plaza Building, Room 8001, Washington, DC 20410 or *Wayne Eddins@hud.gov.*

**FOR FURTHER INFORMATION CONTACT:** Lester J. West, Director, Financial Operations Center, Department of Housing and Urban Development, 52 Corporate Circle, Albany, NY 12203, telephone (518) 464-4200 x4206 (this is not a toll free number) for copies of the proposed forms and other available information.

**SUPPLEMENTARY INFORMATION:** The Department is submitting the proposed information collection to OMB for review, as required by the Paperwork Reduction Act of 1995 (44 U.S.C. Chapter 35, as amended).