

Office of Detention and Removal Operations
U.S. Department of Homeland Security
425 I Street, NW
Washington, DC 20536

# U.S. Immigration and Customs Enforcement

SEP 1 4 2004

**MEMORANDUM FOR:** All Field Office Directors

**FROM:** Victor X. Cerda
Acting Director

**SUBJECT:** Expedited Removal Guidance

## BACKGROUND

The Department of Homeland Security (DHS) Undersecretary for Border and Transportation Security recently announced plans to expand control of the United States borders through increased use of immigration laws to combat illegal entry between the ports-of-entry. This will be accomplished, in part, by immediately expanding the use of expedited removal (ER) processing from the ports-of-entry to locations along the United States border. The expanded authority was announced in the attached Federal Register Notice (FR). See FR 69 FR 48877-01 (August 11, 2004).

## LAREDO AND TUCSON BORDER SECTORS FIRST

ER has traditionally been employed at official ports-of-entry and has not been applied on the land borders to aliens seeking to illegally enter the United States between ports-of-entry. DHS will now apply its ER authority to certain locations along both northern and southern land borders between ports-of-entry. Border Patrol agents will be trained to exercise this authority. Border Patrol plans to initially implement this expansion of ER between the ports-of-entry in the Laredo and Tucson border sectors.

## PRIMARY FOCUS

As the extension of ER is meant as a border-enforcement tool, it will be limited to illegal aliens who have spent less than 14 days in the United States after evading inspection, and who are apprehended within 100 miles of a U.S. International land border. The primary focus of this expansion of ER is directed at "third country nationals" who are not citizens of Mexico or Canada, and who have nominal equities in and ties to the United States. DHS will retain operational discretion to place citizens of Mexico or Canada into ER proceedings, but only expects to apply it to those Mexican and Canadian citizen/nationals with histories of criminal or repeated immigration violations, such as recidivists, alien smugglers, guides, drivers, etc.

Exhibit B

Subject: Expedited Removal Guidance
Page 2

ER EXCEPTIONS

ER will not be applied to unaccompanied juveniles, citizens and nationals of Cuba and El Salvador, and aliens who are members of the Class Action Settlement in American Baptist Churches v. Thornburg, (ABC), which settled the claims of a specific class of Salvadorans and Guatemalans regarding the handling of asylum claims.

CREDIBLE FEAR REFERRALS TO CITIZENSHIP AND IMMIGRATION SERVICES

The expansion of ER does not eliminate existing protections for individuals seeking asylum. When an alien is placed in ER, Customs and Border Protection (CBP) Border Patrol Agents must inquire whether the alien has any reason to fear harm if returned to his or her country, and will refer any alien who expresses an intention to apply for asylum, or a fear of persecution or torture, or a fear of return to his or her home country to a Citizenship and Immigration Services (CIS) Asylum Officer for a "credible fear" interview. Before remanding those aliens who have been referred to a CIS Asylum Officer for a credible fear interview to Detention and Removal Operations (DRO), CBP Border Agents are responsible for providing local CIS Asylum Offices (either by fax or electronically) with a copy of the following paperwork:

- Form I-860, *Notice and Order of Expedited Removal*

- Form I-867A, *Record of Sworn Statement and Proceedings under § 235(b)(1) of the Immigration and Nationality Act (INA)*

- Form I-867B, *Jurat for Record of Sworn Statement and Proceedings under INA § 235(b)(1)*

- M-444, *Information About Credible Fear Interview*

- List of Free Legal; Services Providers

Detention of Border Patrol ER cases is under INA § 235; therefore, Form I-286, *Notice of Custody Determination*, and a Warrant of Arrest are not issued for these cases, even when a case is referred to an Immigration Judge (IJ) after a credible fear finding.

CUSTODY

Aliens placed in ER will be processed in the Enforcement Case Tracking System, (ENFORCE), by CBP Border Patrol Agents and will normally be detained and removed by DRO as soon as possible, consistent with the legal process. In order to properly manage bed space, Field Office Directors are to maximize removal efforts, recommend alternate detention sites (if necessary), and continue to review non-mandatory detention cases pursuant to existing guidelines.

At the time of custody referral, Field Office Directors must ensure that all cases have been properly processed and that all requisite forms have been completed by CBP Border Patrol Agents and

Subject: Expedited Removal Guidance
Page 3

included in the alien file (A-file). Pursuant to the July 20, 2004 Memorandum from Undersecretary for Border and Transportation Security relating to Costs Associated with the Care and Custody of Aliens, DRO will take physical custody of the alien after CBP has completed all of the required paperwork.

To the extent possible, CBP Border Patrol Agents will update the Deportable Alien Control System (DACS) and the Central Index System (CIS) prior to an alien being transferred to DRO custody. However, the final responsibility for this critical task lies with the Field Officer Directors. Please ensure the proper updating of DACS in a timely manner.

PAROLE POLICY

Aliens placed in ER will be detained under INA § 235, not INA § 236. Any release of these aliens will be considered under parole authority of INA § 212(d)(5). Unless an alien is found to have a credible fear, parole is authorized only on a case-by-case basis if required to meet a medical emergency or a legitimate law enforcement objective. See 8 CFR 235.3(b)(2)(iii) and 8 CFR 235.3(b)(4)(ii).

If an alien is found to have a credible fear and referred for section 240 removal proceedings, detention authority will continue to be under INA § 235, and DRO policy is that parole should be granted under 8 § CFR § 212.5(b) only in exceptional cases of medical emergency or where continued detention would cause unusual hardship. Juveniles are a special class and must continue to be treated in accordance with the Flores v. Reno settlement and other special laws applicable to juveniles.

Once credible fear is found, each case must be individually reviewed under these custody criteria, and each file must be documented that the review took place. If the alien or the alien's counsel has independently submitted a parole request, the review should take into account any information submitted as part of the request.

If an alien is transferred to another field office pending conclusion, the receiving Field Office Director shall make custody and parole determinations in accordance with the above policy. As per the above, custody will be maintained absent any new medical emergency, law enforcement objective, or circumstance of unusual hardship if credible fear has been found.

If an IJ grants asylum or withholding of removal, Field Office Directors will apply existing policy in determining whether the alien will be continued in detention or released on parole.

WEEKLY/MONTHLY REPORTS

Field Office Directors will be responsible for the development of weekly and, later, monthly ER tracking reports. The Phoenix and San Antonio Field Offices will be directly impacted by the initial expansion of authority and will bear the greatest reporting burden. However, all field offices

Subject: Expedited Removal Guidance
Page 4

receiving ER cases from this expanded authority will adhere to reporting requirements. Reports will contain the information listed below:

1. The number of aliens (broken down by nationality and numbers) who:

    - did not request credible fear interviews and are awaiting removal;
    - are awaiting credible fear interviews;
    - have received credible fear interviews and continue in detention awaiting proceedings; and
    - have received credible fear interviews and have been paroled based on exceptional circumstances.

2. The average length of stay for aliens (broken down by nationality and numbers) in ER. Include those having credible fear, and who are placed in regular proceedings. Include how much of the detention time is due solely to travel document requests and break down this group by nationality and numbers.

3. The number of aliens (broken down by nationality and numbers) granted relief, to include asylum and withholding of removal.

Headquarters DRO will develop a metric to measure if the number of removals is increasing due to ER.

COMMUNICATION AND FLEXIBILITY

It cannot be emphasized enough that the success of this initiative is dependent upon communication and flexibility on the part of all DRO, CBP and CIS components. Accurate and timely data collection and reporting will permit DHS to continuously evaluate the effect of this pilot. Please keep Headquarters DRO informed of any issues and of the progress related to expanded ER.

Attachments